Sandford L. Frey (SBN 117058)
Stuart I. Koenig (SBN 102764)
**CREIM MACIAS KOENIG & FREY LLP**
633 West Fifth Street, 51st Floor
Los Angeles, California 90071
Telephone: (213) 614-1944
Facsimile:  (213) 614-1961
sfrey@cmkllp.com
skoenig@cmkllp.com

Reorganization Attorneys for Oceanside Mile LLC,
dba Seabonay Beach Resort, Debtor and Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO.: 2:13-bk-35286-BR |
| **OCEANSIDE MILE LLC, doing business as, Seabonay Beach Resort,** | Chapter 11 |
| Debtor and Debtor-In-Possession. | **NOTICE OF MOTION AND MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION, OCEANSIDE MILE LLC, FOR AN ORDER AUTHORIZING EXTENSIONS OF FINAL POST-PETITION FINANCING BY THIRD PARTY LENDER, PURSUANT TO BANKRUPTCY CODE § 364(c), ON A SECURED BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT THEREOF** |
| | DATE:  [To be set.]<br>TIME:<br>CTRM: 1668 |

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................6

II. STATEMENT OF FACTS...........................................................................................7

    **A.**    The Chapter 11 Bankruptcy Case and Jurisdiction...................................7

    **B.**    The Debtor's Business .............................................................................7

    **C.**    Events Leading to Filing of Chapter 11 Case .........................................7

    **D.**    The Financing .........................................................................................8

LEGAL ARGUMENT......................................................................................................10

THE DEBTOR SHOULD BE AUTHORIZED TO ENTER INTO THE POST-PETITION
FINANCING ARRANGEMENT......................................................................................10

    A.    The Terms Of The Proposed Financing Are Fair And Adequate And Reflect
        An Appropriate Exercise Of The Debtor's Business Judgment. ............10

    B.    Authorizing The Post-Petition Financing Under Section 364(c) Of The
        Bankruptcy Code Is Justified Because Of The Tangible Benefits That The
        Bankruptcy Estate Will Reap From Such Financing. ...........................11

    C.    The Debtor has Satisfied the Procedural Requirements for Post Petition
        Financing................................................................................................12

IV. CONCLUSIONS ........................................................................................................12

DECLARATION OF ARTURO RUBINSTEIN..............................................................14

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# TABLE OF AUTHORITIES

**Cases**

In re Ames Dept. Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) ........................................... 10

Richmond Leasing Co. v. Capital Bank N.A., 762 F.2d 1303, 1311 (5th Cir. 1985)........................ 10

**Statutes**

11 U.S.C. § 1107(a) .......................................................................................................................... 7

11 U.S.C. § 1108 .............................................................................................................................. 7

11 U.S.C. § 506(c) ................................................................................................................ 4, 10, 11

28 U.S.C. § 1334(b) .......................................................................................................................... 7

28 U.S.C. § 157(b)(2)(A), (D), (K) and (M) ..................................................................................... 7

Local Bankrupcty Rule 9013-1(f) ..................................................................................................... 5

Local Bankruptcy Rule 9013-1(h) ..................................................................................................... 5

**Rules**

Federal Rules of Bankruptcy Procedure 4001(c)(B)(i)-(xi)........................................................ 4, 10

Federal Rules of Bankruptcy Procedure 4002(b) and (c) ................................................................ 12

Local Bankruptcy Rule 4001-2(b) ............................................................................................. 4, 10

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

2    **COUNSEL FOR SECURED CREDITOR, FIRST CITIZENS BANK, THE DEBTOR, THE**

3    **TWENTY LARGEST UNSECURED CREDITORS, THE OFFICE OF THE UNITED**

4    **STATES TRUSTEE, AND ALL PARTIES ENTITLED TO NOTICE:**

5       **PLEASE TAKE NOTICE** that Oceanside Mile LLC, the Debtor and Debtor-in-Possession

6    ("Debtor") has filed contemporaneously herewith, an Application for an Order Shortening Time for

7    a Hearing on this Motion before the Honorable Barry Russell, in Courtroom "1668" of the United

8    States Bankruptcy Court, located at 255 East Temple Street, Los Angeles, California, 90012, under

9    Local Bankruptcy Rule ("LBR") 9075-1(b) for an Order Authorizing Final Post-Petition Financing

10   by Stonegate Bank, a Florida Banking Corporation ("Stonegate") Pursuant to Bankruptcy Code

11   §346(c), on a Secured Basis.

12      **PLEASE TAKE NOTICE** that Debtor will and does hereby move for entry of an order

13   authorizing approval of post-petition financing in the amount of $5,202,000 by Stonegate pursuant to

14   Title 11, United States Code ("Bankruptcy Code"), Section 364(c), on a secured basis, ("Loan");

15   and, granting such other and further relief as is just and appropriate.

16      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion

17   and Motion, the attached Memorandum of Points and Authorities and Declaration of Arturo

18   Rubinstein, the statements and representations of counsel appearing at the hearing on the Motion,

19   The Motion is made under U.S.C. §§364 and 105, Federal Rule of Bankruptcy Procedure ("FRBP")

20   4001(c), Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

21   California ("LBR") 4001-2, 9013-1 and 9013-1(o)(2)(E) and all other evidence properly before the

22   Court at the hearing on the Motion.

23      **PLEASE TAKE FURTHER NOTICE** that attached hereto and incorporated herein by

24   reference as Exhibit "C" is a true and correct copy of the Promissory Note, which contains all of the

25   terms and conditions of the Loan agreement.

26      **PLEASE TAKE FURTHER NOTICE** that the following concise statement of the relief

27   requested is presented pursuant to the requirements of FRBP 4001(c) (1):

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1.      Interest Rate:

4.79% per annum through October, 2019 at which time interest shall accrue upon the unpaid principal balance at a fixed rate of interest equal to the Index Rate plus three hundred (300) basis points (3.00%) per annum.  Index Rate is defined as the weekly average yield on United States Treasury securities adjusted to a constant maturity of five (5) years, as made available by the Federal Reserve Board.

2.      Maturity:

October, 2024, ten (10) years from the closing date of the loan.

3.      Events of Default:

If any installment of principal or interest is not fully paid within three (3) days after the same becomes due and payable, or if any other monetary obligation due under this Note is not paid in full within three (3) days after the same becomes due and payable; or if any non-monetary term, covenant, agreement or stipulation of the Promissory Note, the Mortgage or of any other instrument securing the Promissory Note is not promptly and fully performed within thirty (30) days after notice, or upon assigning for the benefit of creditors or the commencement of any bankruptcy, insolvency or reorganization proceedings, the entire indebtedness (including principal and accrued interest) remaining unpaid, shall, at the option of Stonegate, become immediately due, payable and collectable, and while in default, the Promissory Note and any deferred interest shall bear interest at the highest rate permitted by the laws of the State of Florida.

4.      Liens:

A senior security interest in the Hotel, along with a senior security interest in all tangible and intangible personal property now or hereafter owned, used or received by the Debtor on, about or in connection with the premises or any business operated by the Debtor on the Hotel together with all proceeds from the sale thereof, including but not limited to the following:  (a) all and singular the fixtures appurtenant thereto, which shall include, insofar as they are now or may hereafter belong to or be used with the premises or any buildings or improvements thereon and whether attached or detached, all goods, equipment, furnishings,  accounts receivable, accounts, rents, deposits, cash, profits, condemnation awards, insurance proceeds and refunds of insurance premiums now or

F:\slf\20211 (Oceanside Mile)\Motion for Approval of Post Petition Financing  (10-8-14).doc

hereafter owned, used, or received by Stonegate or the Debtor on, about or in connection with the Hotel, together with all proceeds of all non-monetary collateral when sold; as well as (i) the rights in or to the proceeds of any fire or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) any debtor's interest as Lessor in any present or future lease or rights to income growing out of the use or occupancy of any part of the Hotel, whether pursuant to lease or otherwise; (b) all licenses, including alcoholic beverage licenses, franchises, contract rights, patents, trademarks, trade names and trade processes used by Debtor in connection with the Hotel and the good will and business records, computer records and software, of any business conducted now or hereafter by Debtor on the Hotel; (c) a foreclosure of the indebtedness secured by the Promissory Note (or a voluntary conveyance in lieu of foreclosure) shall include foreclosure and/or transfer of all of Debtor's right, title and interest in all its tangible and intangible property. Attached hereto and incorporated herein by reference as Exhibit "D" is a true and correct copy of the Security Agreement.

    5.   <u>Borrowing Limits</u>:

$5,202,000

    6.   <u>Borrowing Conditions</u>:

Clearing of all liens against the Hotel, including those of any taxing authorities, and entry of an Order, satisfactory to Stonegate, approving the loan.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with FRBP 4001(c)(B)(i)-(xi), LBR 4001-2(b) and Official Form 4001-2, notice is hereby given that the terms of the financing do not contain any provision for any of the following: cross-collateralization; waiving any claims respecting the validity, perfection or amount of any pre-petition debt; waiving any rights under Bankruptcy Code §506(c); providing for any liens against any avoidance actions; deeming pre-petition debt to be post-petition debt or providing for any security for any pre-petition debt; providing for any professional fee carve-outs; providing for the priming any secured lien; divesting the Debtor of any discretion under a Plan; releasing any claims against the DIP Lender; granting relief from stay; or waiving any procedural requirements.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1  **PLEASE TAKE FURTHER NOTICE** that LBR 9013-1(f) requires that a formal written

2 response to the Motion be filed at least fourteen (14) days before the hearing on the Motion and

3 served upon the moving parties and the Office of the United States Trustee unless a shorter period of

4 time is ordered by the Court.

5  **PLEASE TAKE FURTHER NOTICE** that pursuant to LBR 9013-1(h) the failure of any

6 party to timely object to the Motion may be deemed to constitute consent to the relief sought therein.

7  **WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

8  1. Approving the requested financing on a final basis;

9  2. Approving the form of Order attached hereto and incorporated herein by reference as

10    Exhibit "A"; and

11  3. Granting such other and further relief as is just and appropriate.

12

13 DATED:  October 10, 2014    CREIM MACIAS KOENIG & FREY LLP

14

15        By: ___/s/ Stuart I. Koenig_____

16          SANDFORD L. FREY
          STUART I. KOENIG

17        Reorganizatin Attorneys for Oceanside Mile LLC dba
        Seabonay Beach Resort, Debtor and Debtor in
        Possession

18

19

20

21

22

23

24

25

26

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

5

I:\slf\20211 (Oceanside Mile)\Motion for Approval of Post Petition Financing (10-8-14).doc

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By this Motion, the Debtor seeks approval of this Court of post-petition secured financing in an amount sufficient to pay the outstanding loan balance to First Citizens, in full.  As this Court will recall, as part of the Settlement Order approving Debtor's Motion to Approve Settlement with First Citizens ("Settlement Motion"), the Debtor was granted the authorization to refinance the loan with First Citizens without further order of the Court.  However, the proposed new lender, Stonegate, has requested that they be afforded certain protections provided for under the Bankruptcy Code that were not included in the Settlement Order and therefore this Motion is necessary.  Those protections are more fully set out in the proposed form of Order attached hereto and incorporated herein by reference as Exhibit "A".  The Debtor is informed and believes that First Citizens does not oppose the relief sought in the Motion.

The proposed refinance from Stonegate, in the amount of $5,202,000 ("Loan"), is being made pursuant to Bankruptcy Code § 364(c), on a secured basis.  The new loan contemplates that Stonegate shall be granted a senior lien on essentially all of the property of the Estate under similar terms and conditions as those granted to First Citizens.  As a condition of closing, Stonegate has required that the loan of the Mayo Group LLC, ("Mayo"), the only other secured creditor, to be deemed satisfied in full and a release of any liens held by Mayo.  Mayo has agreed to this condition and will release its liens upon the closing of the Loan.  The Debtor believes that the approval of the Loan will allow the Debtor to dismiss the Bankruptcy Case, with the consent of Stonegate and the cooperation of the creditors. Upon the close of the refinance, the Debtor will be able to either pay all of its other creditors in full or otherwise reach agreement with its creditors to allow for dismissal of the case. Because the approval of the loan from Stonegate will put the Debtor in position to preserve the equity in the Hotel and dismiss the Bankruptcy Case, it is in the best interests of creditors that the loan be approved as requested.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

## II.

## STATEMENT OF FACTS

### A.    The Chapter 11 Bankruptcy Case and Jurisdiction

On October 17, 2013 ("Petition Date"), the Debtor commenced its bankruptcy case by filing in this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of creditors holding unsecured claims has not been formed. The Court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (D), (K) and (M).

### B.    The Debtor's Business

The Debtor is a limited liability company with its corporate headquarters in Los Angeles, California. The Debtor owns and operates a Resort Hotel located in an affluent area of Hillsboro Beach, called the Seabonay Beach Resort ("Hotel"), which is perched on the Atlantic Ocean. The Hotel is close to Fort Lauderdale and its suburbs; three miles south of Boca Raton, and a mile east of Deerfield Beach. The Hotel is also conveniently located to take advantage of the area commonly referred to as the South Florida Millionaire's Mile. The Hotel has 77 newly redecorated rooms, which include standard rooms, junior suites and one-bedroom suites. The suites have full working kitchens, living rooms and balconies. At the current time, the Debtor has approximately 3 full time employees and part time employees.

### C.    Events Leading to Filing of Chapter 11 Case

The Debtor believes that the Hotel has a current fair market value of at least $13 million. First Citizens asserts a claim in the approximate amount of $5,150,000, which it asserts is secured by the Hotel, an assignment of rents and certain personal property ("Senior Secured Loan").

Sun American Bank ("SAB") initially made a loan ("Original Loan") to Borrower in the approximate amount of $6.500,000, which it asserted was secured by a Mortgage and Security Agreement in favor of SAB. The Original Loan was assigned by SAB to First Citizens in 2010.

/ / /

/ / /

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 612-1944

F:\sifi\20211 (Oceanside Mile)\Motion for Approval of Post Petition Financing (10-8-14).doc

1    The Original Loan matured by its terms in or about 2010. Pursuant to various agreements

2    entered into between the Debtor and First Citizens, the Senior Secured Loan was extended through

3    and including October 20, 2013.

4    As of the Petition Date, the Debtor was current on its monthly payments to First Citizens, and

5    was also current on real property taxes. However, the Senior Secured Loan was to become due by

6    its terms on October 20, 2013. Although the Debtor had a preliminary commitment for a

7    refinancing, the refinancing could not be completed by the maturity date of the Senior Secured Loan.

8    Unable to obtain a firm commitment from First Citizens to extend the maturity date in time for the

9    deadline, the Debtor elected to file for Chapter 11 protection so as to preserve the value of the going

10    concern and reorganize its financial affairs. Shortly after the filing of this case, the Debtor began

11    paying adequate protection payments to First Citizens, and has continued to make those payments

12    through the filing of the motion.

13    **D.    The Financing**

14    As stated, the Debtor requests the proposed Loan to be used by the Debtor to pay the secured

15    claim of First Citizens, in full, upon the entry of an Order approving this Motion and the closing of

16    the Loan. The terms of the Loan are set forth in the Promissory Note, a true and correct copy of

17    which is attached hereto and incorporated herein by reference as Exhibit "C".

18    **1.    Total Amount of Financing**

19    $5,202,000.

20    **2.    Interest**

21    4.79% per annum through October, 2019 at which time interest shall accrue upon the

22    unpaid principal balance at a fixed rate of interest equal to the Index Rate plus three hundred (300)

23    basis points (3.00%) per annum. Index Rate is defined as the weekly average yield on United States

24    Treasury securities adjusted to a constant maturity of five (5) years, as made available by the Federal

25    Reserve Board.

26    **3.    Loan Maturity**

27    October, 2024. The loan matures ten (10) years from the date of closing and is

28    amortized over twenty-five (25) years.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

**4.  Security Interest and Priority Rights**

A senior security interest in the Hotel, along with a senior security interest in all tangible and intangible personal property now or hereafter owned, used or received by the Debtor on, about or in connection with the premises or any business operated by the Debtor on the Hotel together with all proceeds from the sale thereof, including but not limited to the following:  (a) all and singular the fixtures appurtenant thereto, which shall include, insofar as they are now or may hereafter belong to or be used with the premises or any buildings or improvements thereon and whether attached or detached, all goods, equipment, furnishings,  accounts receivable, accounts, rents, deposits, cash, profits, condemnation awards, insurance proceeds and refunds of insurance premiums now or hereafter owned, used, or received by Stonegate or the Debtor on, about or in connection with the Hotel, together with all proceeds of all non-monetary collateral when sold; as well as (i) the rights in or to the proceeds of any fire or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) any debtor's interest as Lessor in any present or future lease or rights to income growing out of the use or occupancy of any part of the Hotel, whether pursuant to lease or otherwise; (b) all licenses, including alcoholic beverage licenses, franchises, contract rights, patents, trademarks, trade names and trade processes used by Debtor in connection with the Hotel and the good will and business records, computer records and software, of any business conducted now or hereafter by Debtor on the Hotel; (c) a foreclosure of the indebtedness secured by the Promissory Note (or a voluntary conveyance in lieu of foreclosure) shall include foreclosure and/or transfer of all of Debtor's right, title and interest in all its tangible and intangible property.

**5.  Default**

If any installment of principal or interest is not fully paid within three (3) days after the same becomes due and payable, or if any other monetary obligation due under this Note is not paid in full within three (3) days after the same becomes due and payable; or if any non-monetary term, covenant, agreement or stipulation of the Promissory Note, the Mortgage or of any other instrument securing the Promissory Note is not promptly and fully performed within thirty (30) days after notice, or upon assigning for the benefit of creditors or the commencement of any bankruptcy,

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

9

insolvency or reorganization proceedings, the entire indebtedness (including principal and accrued interest) remaining unpaid, shall, at the option of Stonegate, become immediately due, payable and collectable, and while in default, the Promissory Note and any deferred interest shall bear interest at the highest rate permitted by the laws of the State of Florida.

**6.**   **Release of Claims**

None

**7.**   **FRBP 4001(c)(B)(i)-(xi) and LBR 4001-2(b) Disclosures**

The terms of the financing do not contain any provision for any of the following:

a) Cross-collateralization;
b) Waiving any claims respecting the validity,
c) Perfection or amount of any pre-petition debt;
d) Waiving any rights under Bankruptcy Code § 506(c);
e) Providing for any liens against any avoidance actions;
f) Deeming pre-petition debt to be post-petition debt or providing for any security for any pre-petition debt;
g) Providing for any professional fee carve-outs;
h) Providing for the priming any secured lien;
i) Divesting the Debtor of any discretion under a Plan;
j) Releasing any claims against the DIP Lender; granting relief from stay; or
k) Waiving any procedural requirements.

# III

# LEGAL ARGUMENT

## THE DEBTOR SHOULD BE AUTHORIZED TO ENTER INTO

## THE POST-PETITION FINANCING ARRANGEMENT

**A.**   **The Terms Of The Proposed Financing Are Fair And Adequate And Reflect An Appropriate Exercise Of The Debtor's Business Judgment.**

Bankruptcy Courts give broad deference to the business decisions of chapter 11 debtors, particularly with respect to a debtor's business judgment regarding the need for and proposed use of funds. Richmond Leasing Co. v. Capital Bank N.A., 762 F.2d 1303, 1311 (5th Cir. 1985). As the court noted in In re Ames Dept. Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990), a "court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the DIP financing agreement does not contain terms that leverage the

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a

2    party in interest."

3         The extension of post-petition financing in the instant case reflects the exercise of sound and

4    prudent business judgment by the Debtor.  As set forth in the Declaration of Arturo Rubinstein, over

5    the last eight (8) months or so the Debtor has conducted an exhaustive search of both a refinance or a

6    sale of the Hotel.  The Debtor employed a real estate broker to market the Hotel, and despite an

7    extensive marketing effort by the broker no acceptable offer was presented to the Debtor.   During

8    this same period the Debtor met with a number of lenders in an effort to refinance the obligation to

9    First Citizens, but was unable to get a loan commitment from any other lender under terms better

10   than those proposed by Stonegate.  As explained in the Declaration of Mr. Rubinstein, the Loan

11   represents the best financing available to the Debtor at this time under terms more favorable than any

12   other financing the Debtor was able to find.

13        In addition, Stonegate has not requested any of the protections typically requested by secured

14   lenders or financial institutions, such as cross-collateralization; waiving any claims respecting the

15   validity, waiving any rights under Bankruptcy Code §506(c); providing for any liens against any

16   avoidance actions; providing for any professional fee carve-outs; providing for the priming of any

17   secured lien; divesting the Debtor of any discretion under a Plan; releasing any claims against the

18   insiders; granting relief from stay; or waiving any other procedural requirements.

19        It is clear that the Debtor has been unable to obtain financing from other lenders on terms as

20   favorable as those under the financing by Stonegate at this time.  The financing is not only the best

21   financing alternative available, it is the only financing available on this basis.

22   **B.    Authorizing The Post-Petition Financing Under Section 364(e) Of The Bankruptcy**

23   **Code Is Justified Because Of The Tangible Benefits That The Bankruptcy Estate Will Reap**

24   **From Such Financing.**

25        Bankruptcy Code § 364(c) authorizes the obtaining of secured debt if unsecured debt under

26   Bankruptcy Code §364(b) is not available.  As explained above, and in the Declaration of Mr.

27   Rubinstein, the Loan offered by Stonegate is under the most favorable terms the Debtor has been

28   able to negotiate.  Further, the approval of the Loan will allow the Debtor to pay off the claim of

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

11

1   First Citizens in full, which thereby avoiding a sale of the Hotel by First Citizens and preserving the

2   equity in the Hotel for the benefit of creditors.  Moreover, by paying off the claim of First Citizens,

3   the Debtor is in a position to dismiss the Bankruptcy Case by providing for the payment of its other

4   creditors in full, or other treatment as agreed to by the creditor.  For these reasons the proposed Loan

5   is in the best interest of the creditors of this Estate and should be approved.

6   **C.    The Debtor has Satisfied the Procedural Requirements for Post Petition Financing**

7           FRBP 4001(c) sets forth procedural requirements for obtaining credit.  FRBP 4001(c)(1)

8   requires that the motion begin with a concise statement of the relief requested and identifying where

9   in the motion these various provisions can be found.  In the within Motion they are found on pages 2

10  through 4 hereof.

11          FRBP 4001 (c)(1)(C) require that motions to approve financing be served on any creditors

12  committee elected in the case, of which there is none, or any other entity that the Court directs. The

13  Debtor has served the Motion on First Citizens and Mayo, the list of top 20 largest unsecured

14  creditors and the United States Trustee.

15          FRBP 4001(c)(2) authorize the court to conduct a final hearing no earlier than 14 days after

16  service of the Motion.  However, it further provides that if the Motion so requests, the Court can

17  conduct a hearing before such 14 day period expires, "but the court may authorize the obtaining of

18  credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a

19  final hearing." As explained in the Declaration of Mr. Rubinstein, the Estate and its creditors will

20  suffer irreparable harm if this Motion is not heard on shortened notice.

21                                              **IV.**

22                                         **CONCLUSIONS**

23          **WHEREFORE** based on the foregoing, the Debtor respectfully requests that the Court enter

24  an order approving and authorizing the requested under the terms of the Loan and the proposed

25  Order, and granting such other and further relief as this Court deems just and proper under the

26  circumstances

27

28

I:\slf\20211 (Oceanside Mile)\Motion for Approval of Post Petition Financing (10-8-14).doc

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1

2   DATED:  October 10, 2014                CREIM MACIAS KOENIG & FREY LLP

3

4                                           By:   /s/ Stuart I. Koenig
                                                  SANDFORD L. FREY
5                                                 STUART I. KOENIG
                                            Reorganization Attorneys for Oceanside Mile LLC dba
6                                           Seabonay Beach Resort, Debtor and Debtor in
                                            Possession
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E:\sif\20211 (Oceanside Mile)\Motion for Approval of Post Petition Financing  (10-8-14).doc

### DECLARATION OF ARTURO RUBINSTEIN

I, ARTURO RUBINSTEIN, declare as follows:

1.      I am the managing member of Fab Rock LLC, the managing member of Oceanside Mile LLC *dba* Seabonay Beach Resort, Debtor and Debtor in Possession ("Debtor"). I submit this declaration in support of the Debtor's *Ex Parte Motion* for an order authorizing the Debtor to enter into the Loan Agreement with Stonegate Bank ("Stonegate").

2.      My knowledge of the facts set forth herein is based on my personal knowledge, unless otherwise indicated, my conversations with the Debtor's employees and manager and from my review of the Debtor's books and records. If called upon to testify, I could and would testify competently concerning the contents of this declaration.

3.      Shortly after the Order approving the Debtor's settlement with First Citizens was entered by this Court, I was requested by the Debtor to take responsibility for the sale of the Hotel or to find refinancing of the loan to First Citizens if a sale was not possible. Beginning in April, 2014, I began working with the Debtor's real estate broker, CBRE, Inc., in an effort to find a buyer for the Hotel. Concurrent with those efforts, I met with approximately ten (10) loan brokers or hard money lenders in an effort to refinance the loan with First Citizens. I also met with 5 conventional lender in both Florida and California. I provided each of the conventional lenders and the loan brokers with a package of financial information on the Debtor as they requested.  None of the conventional lenders were willing to enter into an agreement with the Debtor so long as it was in bankruptcy.  Of the hard money lenders I met with, because of the Bankruptcy case, the best interest rate I was offered was 7% plus 400 basis points.

4.      Over the course of the last 6 months CBRE was not able to present the Debtor with any written offers. I was advised by our broker that this was because no one was willing to purchase the Hotel so long as the Debtor was in bankruptcy.

5.      I understood the urgency to pay off the claim of First Citizens based on the terms of the settlement agreement, specifically the requirement that if a sale of the Hotel or a refinance did not close and fund by October 31, 2014, First Citizens would proceed with a sale of the Hotel in Bankruptcy Court by credit bidding the full amount of the loan.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

14

1    6.    After the Settlement Order was entered into, I am informed and believe that a

2    $1,000,000 payment was made to First Citizens on behalf of the Debtor, thereby reducing the

3    amount of their claim to approximately $5,100,000. the Debtor was recently provided with a payoff

4    demand by First Citizens and based on that pay off demand I am informed and believe that the

5    outstanding balance owing to First Citizens is $5,202,000. The Loan agreed to with Stonegate will

6    provide the Debtor with $5,202,000, the amount necessary to pay First Citizens in full.

7    7.    As part of their due diligence, Stonegate had an appraisal of the Hotel performed.  I

8    have been advised, in writing, by a representative of Stonegate that the "As Is" appraised value of

9    the Hotel was $13.2 million.  Given the substantial equity in the Hotel, the Debtor understood that it

10    was critical for the protection of the creditors of this Estate that the Debtor find refinancing or a sale

11    of the Hotel to avoid a foreclosure sale by First Citizens.

12    8.    Despite the fact that the Settlement Order authorized the Debtor to refinance the loan

13    to First Citizens without further Order of this Court, the fact that the Debtor was still in bankruptcy

14    chilled the Debtor's ability to find a lender who would provide financing under terms acceptable to

15    the Debtor.  Of the lenders I spoke or met with, none were willing to provide a loan under the terms

16    proposed by Stonegate.  In each instance the interest rate was higher than that in the Loan and the

17    terms were more onerous then those proposed by Stonegate.  Based on my efforts to refinance the

18    Debtor's obligation to First Citizens, I believe that the terms proposed by Stonegate are fair,

19    reasonable and are in the best interests of the creditors of the Debtor.

20    9.    I negotiated the Loan with Stonegate on behalf of the Debtor.  The negotiations were

21    conducted at arms-length and in good faith.  Neither I nor anyone at the Debtor has had a prior

22    relationship with Stonegate and this is the first transaction that either I, the Debtor or any members

23    of the Debtor has had with Stonegate. On October 6, 2014 the Debtor received a revised Loan

24    Commitment Letter from Stonegate setting out the terms and conditions of the Loan.  Attached

25    hereto and incorporated herein by reference as Exhibit "B" is a true and correct copy of the revised

26    Loan Commitment Letter.  Following the receipt of the revised Loan Commitment Letter the Debtor

27    received the Promissory Note from Stonegate.  Attached hereto and incorporated herein by reference

28    as Exhibit "C" is a true and correct copy of the Promissory Note from Stonegate. The Promissory

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

I:\slf\20211 (Oceanside Mile)\Motion for Approval of Post Petition Financing (10-8-14).doc

as Exhibit "C" is a true and correct copy of the Promissory Note from Stonegate. The Promissory Note provides for a security interest to Stonegate under terms and conditions similar to those granted to First Citizens. Attached hereto and incorporated herein by reference as Exhibit "D" is a true and correct copy of the Security Agreement that is made a part of the Promissory Note.

10.    I have reviewed the proposed form of Order requested by Stonegate, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "A". On behalf of the Debtor I have no objection to its terms.

11.    I have reviewed the Debtor's Schedules and proofs of claim filed against the Debtor. I am personally familiar with the creditors and the obligations of the Debtor. I have personally spoken with a number of the Debtor's creditors and believe that once the obligation to First Citizens has been paid in full the Debtor will be in a position to pay its remaining creditors in full or otherwise reach agreement with them regarding the payment of their claim that will allow the Debtor to dismiss the Bankruptcy Case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on October   2014, at Los Angeles, California.

_____
Arturo Rubinstein

**EXHIBIT "A"**

1  Sandford L. Frey (SBN 117058)
   Stuart I. Koenig (SBN 102764)
2  **CREIM MACIAS KOENIG & FREY LLP**
   633 West Fifth Street, 51st Floor
3  Los Angeles, CA 90071
   Telephone: (213) 614-1944
4  Facsimile: (213) 614-1961
   sfrey@cmkllp.com
5  skoenig@cmkllp.com

6  Reorganization Attorneys for Oceanside Mile LLC dba
   Seabonay Beach Resort, Debtor and Debtor in
7  Possession

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **[LOS ANGELES DIVISON]**

11 | In re                          | CASE NO.: 2:13-bk-35286-BR
12 | **OCEANSIDE MILE LLC, doing business as, Seabonay Beach Resort,** | Chapter 11
13 |                                | **ORDER APPROVING MOTION OF**
   |    Debtor and Debtor in Possession. | **DEBTOR AND DEBTOR-IN-POSSESSION**
14 |                                | **FOR ORDER AUTHORIZING**
   |                                | **EXTENSIONS OF FINAL POST-PETITION**
15 |                                | **FINANCING BY THIRD PARTY LENDER,**
   |                                | **PURSUANT TO BANKRUPTCY CODE §**
16 |                                | **364(c), ON A SECURED BASIS**
17 |                                | DATE:        , 2014
   |                                | TIME:      :00 a.m.
18 |                                | CTRM:      1668
19

20      A hearing was held by this Court on October __, 2014 to consider the Motion of Debtor

21 and Debtor in Possession Oceanside Mile LLC ("Debtor") for entry of an order authorizing and

22 approving final post-petition financing by Stonegate Bank, a Florida Banking Corporation ("DIP

23 Lender") in the amount of $5,200,000.00 ("DIP Loan"), pursuant to Title 11, United States Code

24 ("Bankruptcy Code"), Section 364(c), on a secured basis ("Motion"). _____ of Creim Macias

25 Koenig & Frey LLP appeared on behalf of the Debtor.  All other appearances were made as noted

26 on the Court's official record.

27      The Court, having given due consideration to the Motion; the declarations and other

28 evidence submitted in support of the Motion; the record and proceedings in the case; the arguments

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1844

1   of counsel, and based upon that review and consideration, and, for other good cause appearing

2   therefore: is hereby

3       **ORDERED** that the Debtor's Motion to authorizing and approving final post-petition

4   financing by DIP Lender in the amount of $5,202,000.00, on a secured basis is approved: and

5       **IT IS FURTHER ORDERED** that the proceeds from the DIP Loan shall be used to pay

6   off the debt owed to the existing first mortgage holder, First-Citizens Bank & Trust Company

7   ("First Citizens") in the amount of $5,201,765.41 as provided for in this Court's prior Order (Doc.

8   144); and

9       **IT IS FURTHER ORDERED** that the Loan is a Permitted Refinance as defined in the

10  parties' Settlement Agreement and paragraph 7 of the Court's Order (Doc. 144); and

11      **IT IS FURTHER ORDERED** that the Loan shall not be authorized and shall not close

12  until the Debtor has deposited an amount equal to $325,000 <u>plus</u> any accrued but unpaid interest

13  owed to First Citizens as of the closing date of the Loan (the "Remaining Amount") into an escrow

14  account satisfactory to First Citizens.  The Remaining Amount shall be paid to First Citizens on

15  the closing date of the Loan.

16      **IT IS FURTHER ORDERED** that the DIP Loan as described in the Promissory Note

17  (Exhibit "C" to the Motion) shall be secured by a first priority mortgage lien and security interests

18  in all of Borrower's tangible and intangible assets as described in the Security Agreement (Exhibit

19  "D" to the Motion), including, but not limited to all real property, inventory, furniture, fixtures,

20  accounts receivables, deposit accounts, patents, trademarks and other intellectual property (the

21  "Collateral").  DIP Lender's mortgage liens and security interests in the Collateral shall be senior

22  to all other interests of any party or creditor; and

23      **IT IS FURTHER ORDERED** that DIP Lender shall have a super-priority administrative

24  expense claim, on account of the DIP Loan pursuant to section 364(c)(1) and a superpriorty lien

25  position pursuant to section 364(d) of the Bankruptcy Code; and

26      **IT IS FURTHER ORDERED** that DIP Lender's mortgage liens and security interests

27  shall not be primed, surcharged, altered or impaired or otherwise adversely affected in any way.

28  No claim or expense shall have priority over DIP Lender's rights in the Collateral.  No

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

administrative expense, and no claim allowed and payable under 11 U.S.C. §§ 330, 331, 503(b)

506(c), 507 or 726, shall have priority in and to any asset of the Debtor which constitutes the

Collateral pursuant to 11 U.S.C. §364 (d); and

    **IT IS FURTHER ORDRED** that the extension of credit and making of loans by Lender

hereunder to Borrower is in good faith and, therefore, Lender shall be entitled to the full protection

of 11 U.S.C. §364(e); and

    **IT IS FURTHER ORDRED** that the terms of the financing do not contain any provision

for any of the following: cross-collateralization; waiving any claims respecting the validity,

perfection or amount of any pre-petition debt; waiving any rights under Bankruptcy Code §506(c);

providing for any liens against any avoidance actions; deeming pre-petition debt to be post-petition

debt or providing for any security for any pre-petition debt; providing for any professional fee

carve-outs; providing for the priming any secured lien; divesting the Debtor of any discretion under

a Plan; releasing any claims against the DIP Lender; granting relief from stay; or waiving any

procedural requirements.

# # #

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

**EXHIBIT "B"**



September 9, 2014

Oceanside Mile, LLC
18034 Ventura Blvd., #276
Encino, CA 91316
Attn: Arturo Rubenstein, Manager

Dear Mr. Rubenstein:

We are pleased to inform you that STONEGATE BANK, a Florida banking corporation ("Bank" or "Stonegate"), has approved your request to make the Loan under the following terms and conditions:

**BORROWER:**    Oceanside Mile, LLC, a Florida limited liability company, d/b/a Seabonay Beach Resort

**GUARANTOR:**    The Loan shall be unconditionally guaranteed jointly and severally by Arturo Sergio Rubenstein, Eyal Gamliel, Fab Rock Investments LLC, a Nevada limited liability corporation and Mayo Group, LLC, a Florida limited liability company ("Guarantor" or "Guarantors").

**LOAN AMOUNT:**    Mortgage loan up to the principal amount of the lesser of $5,200,000.00 or 56% LTV (the "Loan").

**PURPOSE OF LOAN:**    The purpose of the loan is to refinance the first mortgage on a 77 unit hotel known as the "Seabonay Beach Resort" located at 1159 Hillsboro Mile, Hillsboro Beach, Florida.

**SECURITY:**    To secure the repayment of the Loan, Borrower shall grant Bank a first mortgage lien and security interest in and to the following property consisting of a 77 unit hotel located at 1159 Hillsboro Mile, Hillsboro Beach, Florida (the "Mortgaged Property").

**Land**: Parcel of real property located in Palm Beach County, Florida, to be more particularly described in the Mortgage (as hereinafter defined), as more particularly described on Exhibit "A" attached hereto and made a part hereof.

Oceanside Mile, LLC
September 9, 2014
Page 2

**Improvements:** A 77 unit hotel known as the "Seabonay Beach Resort" located on the Land (the Land and the Improvements may sometimes be collectively referred to hereinafter as the "Project").

**Leases and Rents:** All leases and rents pertaining to the Project, if any, between Borrower as lessor, guests and tenants, whether now existing or hereafter entered into, together with all security deposits, prepaid deposits, or down payments paid with respect thereto. Any lease now existing or hereafter created shall be expressly subordinate to the lien of the Mortgage.

**Personal Property:** All accounts, accounts receivable, inventory, equipment, trademarks, patents and all other tangible and intangible personal property now or hereafter owned by Borrower and located on the Land.

**INTEREST RATE:**

Interest shall accrue at a fixed rate of 4.79% per annum for the first five years and adjusting at the end of the fifth year to the then US Treasury 5-year interest rate plus 3%, subject to an interest rate floor of 4.79%.

Interest shall be computed based upon the actual number of days the Loan is outstanding as if each year was composed of 360 days.

**REPAYMENT TERMS:**

Borrower shall, commencing the 30 days from the date of the Loan Closing, and on the same day of each and every month thereafter, make monthly principal and interest payments to Bank based upon a 25-year mortgage amortization of the then current principal balance and the interest then in effect. All outstanding principal and accrued interest shall be due and payable on the Maturity Date. The Loan shall mature and the principal balance, together with the unpaid and accrued interest shall be fully due and payable on the tenth (10th) anniversary date of the Closing of the Loan (the "Maturity Date").

**PREPAYMENT:**

If any prepayment of principal due hereunder shall occur for any reason, whether voluntarily or involuntarily, a prepayment charge shall be made by Borrower to Bank (i) equal to three percent (3%) of the principal prepaid, during the first Loan year, (ii) equal to two percent (2%) of the principal prepaid, during the second Loan year, and (iii) equal to one percent (1%) of the principal prepaid, during the third Loan year. Beginning the fourth Loan year, there will be no prepayment charge.

Notwithstanding the foregoing, Borrower may make an annual 20% principal reduction payment without penalty.

Oceanside Mile, LLC
September 9, 2014
Page 3

Any partial prepayments made by Borrower shall not entitle Borrower to a release of any of the property unless Bank agrees otherwise in writing.

**LOAN CLOSING:** The Loan shall be closed by counsel for Bank within forty-five (45) days from the acceptance date of this Commitment Letter, unless extended in writing by Bank at its sole discretion (the "Closing"), provided, however, in the event of a desired extension in excess of thirty (30) days, both Borrower and Bank shall be required to consent to such extension. Bank's counsel ("Counsel") for this transaction shall be:

Philip J. Morgan, Esq.
BRINKLEY MORGAN
200 East Las Olas Boulevard, Suite 1900
Fort Lauderdale, FL 33301

**LOAN FEES:** A $26,000.00 Loan Commitment Fee which shall be due to Bank upon acceptance of this Commitment Letter.

Borrower shall pay all closing costs and Bank's out-of-pocket expenses associated with the Loan. Bank's counsel in connection with the preparation of this Commitment Letter and the closing of the Loan is Brinkley Morgan and Borrower shall be responsible for the payment of all of Bank's counsel fees and expenses.

**GENERAL CONDITIONS:**

1. **DOCUMENTATION**

Prior to the Closing, Bank shall have received the following documents as applicable as to each Facility:

(a) **Loan Documents:**

Properly executed Loan documents as required herein, including, but not limited to a Note, Mortgage (the "Mortgage"), Collateral Assignment of Rents and Leases, Environmental Indemnity Agreement, Americans With Disabilities Indemnification Agreement, Guaranty Agreements, Subordination of Shareholder/Member Loan/Debts, and any other documents required by Bank in its sole and absolute discretion. The Environmental Indemnity Agreement and Americans With Disabilities Indemnification Agreement shall also be executed by Guarantor.

Oceanside Mile, LLC
September 9, 2014
Page 4

(b) **Insurance:**

At least ten (10) days prior to the Closing, Borrower shall provide to Bank satisfactory evidence of insurance for hazards, windstorm, liability (which liability policy shall provide protection to the extent of not less than $2,000,000.00 per occurrence for death or injury and $1,000,000.00 per occurrence covering damage to the property), worker's compensation and any other special coverages as Bank may reasonably require. All policies are to be written by a State of Florida licensed company processing a general policy holder's rating of "A" or better and a financial rating of Class XII or better according to Best's Key Rating Guide current at the time of the Closing. All hazard policies are to name "STONEGATE BANK and its successors or assigns" under a "long form" or "New York Standard Mortgage/Without Condition: clause "as its interest may appear." All liability policies should name Bank as an "additional named insured, as its interest may appear". Also, all policies should contain a clause under which the insurer agrees to give thirty (30) days prior written notice to the mortgagee/loss payee of expiration, cancellation, termination or modification of the policy.

The foregoing insurance evidence may be satisfied by providing to Bank a master multi property blanket policy with coverage satisfactory to Bank.

For all permanent mortgage loans, Bank requires a hazard insurance policy with "All-Risk" coverage (including, but not limited to fire, windstorm, extended coverage, vandalism and malicious mischief) and an "Ensuing Loss" Clause. The amount of the hazard insurance policy shall be equal to the lesser of the value of the Improvements or the Note amount, but not less than that required by the Co-Insurance Clause (if any).

Federal regulations require flood insurance for all improvements presently located or to be constructed in a designated Flood Zone "A" in an amount equal to the Loan amount or the maximum available for the property, whichever is less. If applicable, Bank is to be provided with a copy of the policy or application indicating Bank as mortgagee, along with a paid receipt prior to closing.

(c) **Survey.**

At least five (5) days prior to the closing of the Loan, Bank shall be furnished with a survey on the Mortgaged Property dated no earlier than the date of this Commitment Letter, prepared by a registered, certified land surveyor or engineer clearly delineating all existing Improvements and/or those to be constructed, encroachments, easement and rights-of-way abutting or affecting any part of the Land and the designated flood zone the property lies in. The survey must be signed, sealed and certified in form and content satisfactory to Bank. The survey

Oceanside Mile, LLC
September 9, 2014
Page 5

must be certified both to STONEGATE BANK and to the title insurance company
providing the mortgagee title insurance policy.

(d)    **Title Insurance**.

Borrower shall provide Bank with a standard ALTA mortgagee title insurance
policy issued by a title insurance company acceptable to Bank, demonstrating
Borrower's fee simple title to the Mortgaged Property and that the Loan
Documents will and do establish valid, perfected, first priority liens and security
rights against the Mortgaged Property (including priority over all construction
liens), including a binding commitment for mortgagee title insurance (with
complete, legible copies of all plats and exception documents) no later than 10
days before closing, a mortgagee title policy promptly after closing in the amount
of the loan with no exceptions or exclusions not acceptable to Bank and including
all endorsements required by Bank, and reports of searches of the central and
local UCC records indicating no liens of record within 10 days of the Closing, all
issued to Bank. Bank will require that all Notices of Commencement affecting
the Mortgaged Property shall be properly terminated prior to closing. Bank may
require title reinsurance and/or coinsurance, and all title insurers and agents and
UCC search contractors must be satisfactory to Bank.

(e)    **Uniform Commercial Code Financing Statement**.

Executed, recorded and filed, creating a perfected first lien security interest in all
Personal Property, rents and leases.

(f)    **Assignment of Leases, Rents and Profits**.

Shall be in form and substance acceptable to Bank and its counsel. All future
leases are to be approved by Bank. All existing leases must be subordinated to
the recorded Mortgage.

(g)    **Opinion of Borrower's Counsel**.

To the effect, among things, that the Loan documents contemplated hereby will be
valid, duly executed and enforceable in accordance with their terms.

(i)    **Borrowing Authority Documents**.

Documents which evidence the necessary authorization for the actions to be taken
by Borrower and each of the Guarantors in connection with this Commitment
Letter and the Loan. Appropriate documents shall include, as applicable,
partnership agreements, articles of incorporation, by-laws, corporate borrowing
resolutions, incumbency certificates, and current certificates of good standing.

Oceanside Mile, LLC
September 9, 2014
Page 6

(j)     **Subordination of Shareholder/Member Loans/Debts.**

Borrower shall provide at closing a Subordination of shareholder/member loans
and debts owed by Borrower to the shareholders/members.

(k)     **Miscellaneous.**

Such other documents, consents, exhibits and counsel opinions as Bank or its
counsel may reasonably require.

2.     **APPRAISAL**

This Commitment Letter is subject to Bank's receipt and approval of an initial current
appraisal of the Mortgaged Property showing a market value of the Mortgaged Property
acceptable to Bank (the "Appraised Value"). Each appraiser and appraisal must be satisfactory to
Bank (including satisfaction of applicable regulatory requirements) and the appraiser must be
engaged directly by Bank.

3.     **HAZARDOUS WASTE**

Bank has received a copy of a Phase I Environmental Report prepared by Varian &
Associates dated September 23, 2013 (the "Phase I"). Bank has accepted the Phase I.

Borrower expressly represents to Bank that the Mortgaged Property and the current
and/or proposed Improvements thereon have not in the past been used, and are not presently
being used, and will not in the future be used for the handling, storage, transportation, or disposal
of hazardous or toxic material and that asbestos materials are not a part of the construction of
these Improvements. Borrower agrees to indemnify, defend, and hold Bank harmless from and
against any loss to Bank, including, without limitation, attorney's fees incurred by Bank as a
result of such past, present or future use, handling, storage, transportation, or disposal of
hazardous or toxic materials or the removal or replacement of asbestos materials.

4.     **BUILDING CONDITION REPORT**

This Commitment Letter is subject to Bank's receipt and approval of a building condition
report of the Improvements acceptable to Bank.

5.     **APPROVAL OF FORM AND SUBSTANCE**

All instruments and documents required hereby or affecting the Mortgaged Property, or
relating to Borrower's capacity and authority to take the Loan, to execute the Loan documents
and other such documents, instruments, opinions and assurances as Bank may reasonably request
or require, and procedures and requirements in connection with this Commitment Letter or the

Oceanside Mile, LLC
September 9, 2014
Page 7

Loan documents shall be subject to the approval, as to form and substance, of Bank and Bank's counsel.

6.   **PLACE AND DATE OF CLOSING**

Subject to satisfaction or completion of or compliance with, as the case may be, each and every term, provision and condition hereof, this Loan shall be closed at Borrower's expense by counsel, at Bank's counsel's offices. Such expenses shall include, but are not limited to, Bank's counsel fees, intangible tax, and documentary stamp tax. The closing shall be held on or before forty-five (45) days from the date of Borrower's acceptance of this Commitment Letter. Unless the Closing is held on or before such date, Bank's obligations hereunder will, at Bank's option, will terminate.

7    **INTENTIONALLY DELETED**

8.   **FLORIDA TRANSACTION**

Regardless of where any of the Loan documents are finally executed by Borrower, this Loan shall be a Florida transaction, and accordingly, the Loan documents shall bear appropriate Florida documentary stamps and intangible tax which shall be paid by Borrower.

9.   **DUE ON SALE/ASSUMABILITY**

The Loan shall be due and payable upon any sale, transfer or conveyance of the Mortgaged Property or upon the dissolution of Borrower unless otherwise expressed in writing by Bank. This Commitment Letter may not be assigned and the Loan described herein will not be assumable without the prior written consent of Bank.

10.   **LEASES AND RENT ROLL AND MANAGEMENT AGREEMENTS**

Prior to closing, Borrower shall provide to Bank copies of all leases, both space and equipment, and any management agreements affecting the Mortgaged Property. Borrower shall also provide lease subordination agreements from existing tenants (except transient guests on day to day rentals) as required by Bank in Bank's sole discretion.

11.   **FINANCIAL INFORMATION**

A.   On an annual basis, within thirty (30) days of year end (or more frequently if required by Bank) Borrower shall submit to Bank then current dated and certified (by Borrower) internally prepared corporate financial statements.

B.   On an annual basis, within thirty (30) days of the anniversary date of the prior year's financial statement provided to Bank (or more frequently if required by Bank) Arturo Sergio Rubenstein and Eyal Gamliel, shall submit to Bank then current dated and certified (by Arturo Sergio Rubenstein or Eyal Gamliel, as applicable) personal financial statements.

Oceanside Mile, LLC
September 9, 2014
Page 8

C.      Borrower and Mayo Group, LLC shall submit to Bank within thirty (30) days of timely filing but in no event later than September 15th of each year, copies of all income tax returns including schedules, K-1's and extensions.

D.      Arturo Rubenstein and Eyal Gamliel shall submit to Bank within fifteen (15) days of timely filing, in in no event later than September 15th of each year, copies of all income tax returns including schedules, K-1's and extensions.

E.      On an annual basis, Bank shall have the right to conduct an inspection of the Mortgaged Property.

Borrower and Guarantor shall also submit to Bank any other financial or the Mortgaged Property information required by Bank in form and substance satisfactory to Bank.

## 12.   **ATTORNEY'S FEE AND COSTS IN THE EVENT LOAN DOES NOT CLOSE**

Borrower agrees that should this Loan fail to close for any reason other than the arbitrary refusal of Bank, that Bank's counsel shall be entitled to be reimbursed for any of their out-of-pocket costs and to be paid a reasonable fee for its services through the expiration date of this Commitment Letter, and Borrower understands that such fee shall be paid by Borrower immediately upon receipt of a statement. It is understood and agreed that the Loan Commitment Fee or any portion thereof shall not be used to pay Bank's counsel's fees or costs.

## 13.   **BANK'S RELIANCE/BORROWER'S WARRANTY**

Borrower warrants and represents that all of the documents and/or information provided Bank prior to the date hereof are materially true and correct and further acknowledges that the issuance of this commitment Letter by Bank is in reliance upon the material accuracy and truth of said documents and/or information.

## 14.   **BORROWER'S FAILURE TO PERFORM**

Insofar as performance by Borrower is concerned, time is of the essence. In the event that Borrower fails to meet any of the requirements contained in any provision of this Commitment Letter, other than those requirements that are out of the control of Borrower, such failure to meet the specified deadline or comply with such requirements automatically bestows upon Bank the option, acting again in its sole and unfettered discretion, to terminate and cancel this Commitment Letter and any other appurtenant documents. In the event Bank exercises its option to cancel this Commitment Letter for the foregoing reasons, Borrower will forfeit and Bank will retain the entire Loan Commitment Fee specified herein a liquidated damages to compensate for time spent, labor and services performed, loss of interest, and any other losses incurred by Bank in connection with the closing of the transaction contemplated hereby.

Oceanside Mile, LLC
September 9, 2014
Page 9

15.    **SUBORDINATE FINANCING**

No subordinate financing of any kind is permitted without the prior written approval of Bank, except trade payables incurred in the ordinary course of business which shall not need Bank approval.

16.    **BANK ACCOUNTS**

During the term of the Loan, Borrower will establish with Bank its business accounts relating to the Mortgaged Property and the operations conducted on the Mortgaged Property.

17.    **CONDITION OF SECURITY AT CLOSING**

Any vacant parcel of land and/or any Improvements constituting a portion of the Mortgaged Property shall be in a condition at the time of Closing satisfactory to Bank in its sole and unfettered discretion. An inspection by STONEGATE BANK will determine whether or not the security is acceptable.

In any inspections by Bank indicate that repairs are required to comply with the terms of this condition, then evidence of payment in full of the cost of such repairs must be submitted and approved by Bank prior to the Closing.

18.    **EVENTS OF DEFAULT**

The occurrence of any of the following events shall be deemed a default by Borrower of its obligation under this Commitment Letter (and under the Loan documents evidencing the Loan) upon which Bank shall not be obligated to close the Loan:

(a)    Borrower shall fail or refuse to comply in a timely way with any of the requirements or conditions of this Commitment Letter or the Loan documents; or

(b)    If any material adverse change shall occur in the financial condition, results of operations, business, properties, or prospects of Borrower, its subsidiaries, parent or affiliates from the condition represented in the application for the financing described in this Commitment Letter or any supporting documentation; or

(c)    If Borrower shall admit in writing its inability to pay its debts generally as they become due, or consent to the appointment of a receiver of all or any part of its property, or make any assignment for the benefit of creditors, or file a petition in bankruptcy or for reorganization pursuant to Bankruptcy Code or similar law; or

(d)    If any of the creditors of Borrower shall file a petition in bankruptcy against Borrower or for the reorganization or liquidation of Borrower or any of the creditors pursuant to Bankruptcy Code or similar law; or

Oceanside Mile, LLC
September 9, 2014
Page 10

(e)   If any misstatement of fact or omission of any material fact or any fact necessary to make any statement contained therein not materially misleading in any information, exhibit or report furnished to Bank by Borrower in connection with the issuance of this Commitment Letter; or

(f)   The death or dissolution or liquidation of Borrower or any Guarantor;

(g)   If Borrower or Guarantor shall default in any other obligation to Bank; or

(h)   If Borrower or Guarantor shall fail to meet any of the required financial covenants.

## 19.   CONFIDENTIALITY

The information set forth in this Commitment Letter is for the exclusive use of Bank and Borrower and shall not be disseminated to any third party without the express prior written consent of Bank.

## 20.   PARTICIPATION OR SALE OF LOAN

Bank may sell the Loan or undivided ownership or participation interests in the Loan and disclose in confidence such financial and other information regarding Borrower and/or the Mortgaged Property which Bank may deem necessary in connection therewith. Borrower shall execute, acknowledge and deliver any and all instruments reasonably requested by Bank in connection with the foregoing.

## 21.   APPLICABLE LAW/INTERPRETATION

THIS COMMITMENT LETTER AND THE LOAN DOCUMENTS SHALL BE GOVERNED ENTIRELY BY FLORIDA LAW AND APPLICABLE UNITED STATES FEDERAL LAW. Mention of specific documents and/or specific terms and conditions in this Commitment letter shall not limit the scope of any requirement stated in broader terms, and the words "include" and "including" shall be interpreted as if followed by the words "without limitation."

## 22.   DEFINITIONS AND CALCULATIONS OF INTEREST

The effective rate of interest on the Loan shall not, in any event, exceed the applicable maximum effective rate of interest permitted by law. Borrower agrees to give notice to Bank at least thirty (30) days in advance of any payment of interest to be made by Borrower which would cause the Loan to be usurious and Bank agrees not to knowingly collect from Borrower any interest which would cause the Loan to be usurious.

Oceanside Mile, LLC
September 9, 2014
Page 11

23.    **INDEMNIFICATION**

    (a)    Borrower shall indemnify and hold Bank and its directors, officers, agents, employees, and attorneys harmless from all liability, loss, expense or damage of any kind or nature, including, without limitation, any suits, proceedings, claims, demands, or damages (including attorneys' fees and costs paid or incurred in connection therewith at both trial and appellate levels), incurred or arising by reason of:

        (i)    This Commitment Letter or the making of the Loan (except for liability, loss, expense, or damage arising from the gross negligence or wilful misconduct of Bank);

        (ii)    Any claim or action for the payment of any brokerage commissions or fees which may be claimed to be payable in connection with this commitment Letter relating to the actions of Borrower, their employees, officers, agents, attorneys, etc.; and

        (iii)    The past, present or future handling, storage, transportation, or disposal of hazardous substances upon the Mortgages Property.

    (b)    These indemnifications shall survive the full payment and performance of the obligations of Borrower under the Loan documents.

24.    **AFFIRMATIVE COVENANTS**

    In addition to the conditions to be set forth in the Loan documents, Borrower shall, throughout the Loan term:

    A.    Pay and discharge all taxes, assessments and governmental charges levied against Borrower, its properties or assets in a timely manner, except those which are being contested in good faith.

    B.    Execute and deliver financing statements in form and substance satisfactory to Bank when so requested to perfect or continue any and all security interest of Bank in any collateral.

    C.    Promptly inform Bank in writing of any adverse change, condition, or act which will materially affect Borrower's financial condition, or Bank's rights in the collateral or under the Loan documents and of any litigation or, to Borrower's knowledge, threatened litigation which might adversely affect Borrower's financial condition.

Oceanside Mile, LLC
September 9, 2014
Page 12

   D.      Maintain insurance with responsible insurance carriers against such risks and in such amounts as Bank shall require and consistent with the values as set forth in the appraisal to be obtained by Bank.

   E.      Maintain its properties, facilities, equipment and tangible assets in good working order and repair.

   F.      Maintain and preserve its corporate existence and all rights, privileges, licenses, permits and other authority for the conduct of its business.

   G.      Borrower shall maintain its principal banking relationship with Bank.

   H.      Provide Bank with other financial information or reports as may be reasonably requested from time to time by Bank.

## 25.   **NEGATIVE COVENANTS**:

During the term of the Loan, Borrower shall not, without prior written consent of Bank:

   A.      Borrow money or permit to exist a lien on or pledge any of its assets (other than in favor of Bank), except borrowed monies, liens and pledges existing as of the date of this Commitment Letter, or as a matter of due course of business.

   B.      Guaranty and/or endorse loans or other obligations whether for itself or any other individual or entity, except for guarantees and leases which are in effect as of the date of this Commitment Letter, or as a matter of due course of business.

   C.      Lend money, credit, make or permit to be outstanding loans or advances to any person, firm or corporation except in the normal course of business and except for those loans or advances which exist as of the date of this Commitment Letter.

   D.      Liquidate, dissolve, reorganize, or enter into any merger or consolidation, or sell, lease, assign or otherwise dispose of or transfer any of its assets except in the normal course of business.

   E.      Sell, transfer, assign, convey, lease or further encumber all or part of the property constituting the collateral for this Loan, or any interest therein.

## 26.   **SPECIAL CONDITIONS**

The following are conditions of the Loan closing:

   A.      A debt service coverage ratio of 1.40x for the premises shall be maintained by Borrower through the Maturity Date of the Loan based upon the annual cash flow from the premises and the actual principal and interest payments of the Loan, tested

Oceanside Mile, LLC
September 9, 2014
Page 13

    annually. The debt service coverage ratio is defined as net income plus non-cash items (i.e. depreciation and amortization plus interest expense) divided by principal and interest expense on all of Borrowers' debt. In the event the debt service coverage ratio falls below 1.40x, Borrower shall have ninety (90) days to cure the deficiency and bring the debt service coverage ratio up to 1.40x or better; or within the ninety (90) day period to cure, Borrower shall pay down the outstanding principal balance of the Loan to achieve a debt service coverage ratio of 1.40x or better.

B.    Borrower shall maintain a minimum net worth of $3,200,000.00 through the Maturity Date of the Loan, to be measured and determined annually by Bank.

C.    Prior to Closing, Borrower shall provide to Bank satisfactory verification of all equity injected into the Project from the dated Borrower acquired the Project to date.

D.    Prior to Closing, Borrower shall provide Bank with evidence of payment of all outstanding tax liens, code enforcement and all other liens against the Mortgaged Property.

E.    Grandbridge Real Estate Capital, LLC is Borrower's mortgage broker and shall be paid by Borrower at the time of Closing from the proceeds of the Loan.

F.    Compliance with all requirements of the Settlement and Release Agreement for a Permitted Refinance as defined in Oceanside Mile LLC, Chapter 11 in the United States Bankruptcy Court, Central District of California, Lo Angeles Division Case 2:13-bk-35286-BR, Document 142 and with the Order Granting Motion to Approve: (1) Settlement of Secured Claim and Settlement Agreement Between Debtor and First Citizens Bank & Trust Company Pursuant to F.R.B.P. 9019 and (2) Procedures for Sale of Seaboney Beach Resort Document 144 including but not limited to the following:

    i.    $325,000 to be escrowed with Counsel for the closing agent to be used to pay fees and costs of First-Citizens or to pay amount counsel for the borrower and First-Citizens agree upon.

    ii.    Escrow letter from First-Citizens agreeing to accept $325,000 or less for its fees and costs from debtor and that the Debtor has not breached the Settlement Agreement and Release.

    iii.    Escrow letter from First-Citizens for amount due under the Settlement and Release Agreement for everything other than attorney fees and costs.

    iv.    Copy of Order Dismissing Bankruptcy Case Upon Filing Of Dismissal Notice executed by Bankruptcy Judge, the form of which was attached as Exhibit "B" to the Settlement Agreement dated March 6, 2014.

Oceanside Mile, LLC
September 9, 2014
Page 14

  v. Dismissal Notice signed by Debtor, Mayo Group and First-Citizens with
    Closing Agent having right to file same upon funding of loan.

  vi. Satisfaction of Mayo Group mortgage.

  vii. Satisfaction of First-Citizens mortgage.

  viii. Closing of loan and funding to First-Citizens mortgage on before October 31,
    2014.

27. **WAIVER OF JURY TRIAL**

**THE PARTIES HEREBY MUTUALLY AGREE (AND ANY PARTNERS) THAT
NEITHER PARTY, NOR ANY PARTNER, ASSIGNEE, SUCCESSOR, HEIR, OR
LEGAL REPRESENTATIVE OF THE PARTIES (ALL OF WHOM ARE
HEREINAFTER REFERRED TO AS THE "PARTIES") SHALL SEEK A JURY TRIAL
IN ANY LAWSUIT, PROCEEDINGS, COUNTERCLAIM, OR ANY OTHER
LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS
AGREEMENT OR ANY INSTRUMENT EVIDENCING, SECURING, OR RELATING
TO THE INDEBTEDNESS AND OTHER OBLIGATIONS EVIDENCED HEREBY OR
THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES,
OR ANY OF THEM. NONE OF THE PARTIES WILL SEEK TO CONSOLIDATE ANY
SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY
OTHER ACTION IN WHICH A JURY TRIAL HAS NOT BEEN WAIVED. THE
PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY NEGOTIATED BY THE
PARTIES WITH BANK, AND THESE PROVISIONS SHALL BE SUBJECT TO NO
EXCEPTIONS. BANK HAS IN NO WAY AGREED WITH OR REPRESENTED TO
ANY OF THE PARTIES THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT
BE FULLY ENFORCED IN ALL INSTANCES. THE WAIVER CONTAINED HEREIN
IS IRREVOCABLE AND CONSTITUTES A KNOWING AND VOLUNTARY WAIVER.**

28. **IN SUMMARY**

  Notwithstanding anything to the contrary in the Loan documents, the terms and
conditions of this Commitment Letter will survive the Loan closing. A default by Borrower
under this Commitment Letter shall constitute a default under the Note, Mortgage, and other
Loan documents.

  This Commitment Letter shall supersede all other agreements, applications and
commitments, either written or oral, as well as **all** other forms of communication heretofore
entered into or exchanged between Borrower and Bank.

  Please indicate your acceptance of this Commitment Letter by signing on the following
lines and returning this original copy along with a deposit for loan expenses in the amount of
$26,000.00 no later than September 11, 2014 at 5:00 p.m. after which date, failing your

Oceanside Mile, LLC
September 9, 2014
Page 15

acceptance, this Commitment Letter shall automatically expire and become null and void. Any extension of the expiration date of this Commitment Letter shall be in writing, at the sole discretion of Bank.

BANK:

STONEGATE BANK

By: _____
    Eric X. Servailes, Senior Vice President

BORROWER:

OCEANSIDE MILE, LLC, a Florida limited liability company

By: _____
    Arturo Rubenstein, Manager

GUARANTOR:

_____
ARTURO SERGIO RUBENSTEIN

_____
EYAL GAMLIEL

FAB ROCK INVESTMENTS LLC, a Nevada limited liability company

By: _____
    Arturo Rubenstein, Manager

MAYO GROUP, LLC, a Florida limited liability company

By: _____
    Mazliagh Gamliel, Managing Member

Oceanside Mile, LLC
September 4, 2014
Page 15

This Commitment Letter shall supersede all other agreements, applications and commitments, either written or oral, as well as all other forms of communication heretofore either made or exchanged between Borrower and Bank.

Please indicate your acceptance of this Commitment Letter by signing on the following lines and returning this original copy along with a deposit for loan expenses in the amount of $80,000.00 no later than September 11, 2014 at 5:00 p.m. after which date, failing your acceptance, this Commitment Letter shall automatically expire and become null and void. Any extension of the expiration date of this Commitment Letter shall be in writing, at the sole discretion of Bank.

BANK:

STONEGATE BANK

By: _____
       Eric X. Servaites, Senior Vice President

BORROWER:

OCEANSIDE MILE, LLC, a Florida limited
liability company

By: _____
       Arturo Rubenstein, Manager

GUARANTOR:

_____
ARTURO SERGIO RUBENSTEIN


_____
EYAL GAMLIEL


FAB ROCK INVESTMENTS LLC, a Nevada
limited liability company

By: _____
       Arturo Rubenstein, Manager

MAYO GROUP, LLC, a Florida limited liability
company

By: _____
       Yoram Eliyahu, Manager

Scanned by CamScanner



October 6, 2014

Oceanside Mile, LLC
18034 Ventura Blvd., #276
Encino, CA 91316
Attn: Arturo Rubenstein, Manager

Dear Mr. Rubenstein:

This letter amends that certain Commitment Letter by and between Oceanside Mile, LLC, a Florida limited liability company and Stonegate Bank, a Florida banking corporation dated September 9, 2014 (the "Commitment Letter"). The loan amount under the Commitment Letter is hereby amended to be $5,202,000.00.

Please indicate your agreement to this Amendment to the Commitment Letter by signing on the following lines and returning this original copy no later than October 8, 2014 at 5:00 p.m.

BANK:

STONEGATE BANK

By:_____
    Eric X. Servaites, Senior Vice President

BORROWER:

OCEANSIDE MILE, LLC, a Florida limited
liability company

By:_____
    Arturo Rubenstein, Manager

GUARANTOR:

_____
ARTURO SERGIO RUBENSTEIN


_____
EYAL GAMLIEL

Oceanside Mile, LLC
October 6, 2014
Page 2

FAB ROCK INVESTMENTS LLC, a Nevada
limited liability company

By:_____
      Arturo Rubenstein, Manager

MAYO GROUP, LLC, a Florida limited liability
company

By:_____
      Mazliach Gamliel, Managing Member

**EXHIBIT "C"**

# PROMISSORY NOTE

U.S. $5,202,000.00

DATE: October _____, 2014
Fort Lauderdale, Florida

### 1.    PROMISE TO PAY:

FOR VALUE RECEIVED, the undersigned, OCEANSIDE MILE, LLC, a Florida limited liability company (hereinafter referred to as "Maker"), hereby promise to pay to the order of STONEGATE BANK, a Florida banking corporation (hereinafter referred to as "Holder") which term shall include any subsequent holder hereof, the sum of $5,202,000.00 payable in such coin or currency of the United States of America as shall be legal tender for the payment of public and private debts at the time of payment at the offices of STONEGATE BANK, a Florida banking corporation located at 1430 N. Federal Highway, Fort Lauderdale, Florida 33304 (or at such other place as Holder may designate), with interest from the date hereof at the rate of 4.79% per annum until October _____, 2019 ("Change Date") at which time interest shall accrue upon the unpaid principal balance of this Promissory Note (this "Note") at a fixed rate of interest equal to the Index Rate (as defined herein) plus three hundred (300) basis points (3.00%) per annum, until paid in full; provided, however, that in no event will the interest rate exceed the maximum rate of interest allowed by Florida law nor will the interest rate be less than 4.79% per annum. Payments of principal and interest are due monthly beginning November _____, 2014, and on the _____ day of each consecutive month thereafter. The final payment, consisting of the entire remaining principal balance, plus accrued but unpaid interest, shall be due on October _____, 2024 (the "Maturity Date"). Interest shall be computed on the entire outstanding principal balance on the basis of a 360 day year for the actual number of days elapsed.

### 2.    DEFINITION OF INDEX RATE:

The term "Index Rate" shall mean the weekly average yield on United States Treasury securities adjusted to a constant maturity of five (5) years, as made available by the Federal Reserve Board. The most recent Index Rate as of ten (10) days before the Change Date shall be used to determine the interest rate under this Note. If the Index is no longer available, Holder will choose a new Index which is based upon comparable information, and will give notice to Maker of the choice made by Holder.

### 3.    AMOUNT OF MONTHLY PAYMENTS:

The initial monthly payment of principal and interest will be in the amount of $_____, based upon the initial interest rate of 4.79% per annum and an increase in the interest rate on the Change Date of October _____, 2019, will result in higher monthly payments. The amount of the monthly payment will always be sufficient to repay the principal outstanding in full in substantially equal payments by October _____, 2039 (i.e. this Note is amortized over twenty-five (25) years; however, this Note is due on October _____, 2024). If the monthly payment changes as a result of the adjustment of the interest rate on this Note, the monthly payment will change as of the first monthly payment due after the Change Date.

4.    PREPAYMENT:

If any prepayment of principal due hereunder shall occur for any reason, whether voluntarily or involuntarily within one (1) year from the date hereof, a prepayment charge shall be made which will be equal to three percent (3%) of the principal prepaid. If any prepayment should occur whether voluntarily or involuntarily within the second year from the date hereof, a prepayment charge shall be made which will be equal to two percent (2%) of the principal prepaid. If any prepayment should occur whether voluntarily or involuntarily within the third year from the date hereof, a prepayment charge shall be made which will be equal to one percent (1%) of the principal prepaid. Should a prepayment occur within years four and ten from the date hereof, there will be no prepayment charge.   Said prepayment charge is for the purpose of defraying the expenses incident to handling and administering the loan.

Notwithstanding the foregoing, Maker may prepay annually without a prepayment penalty charge of up to a maximum amount of 20% of the principal amount then outstanding under this Note at the time of prepayment. Any partial prepayments made by Maker shall not entitle Maker to a release of any of the Mortgaged Property (as hereinafter defined) unless Holder agrees otherwise in writing.

5.    APPLICATION OF PAYMENTS:

All payments shall apply first to accrued interest and the remainder, if any, to reduction of principal; then to late charges and then to unpaid collections charges. All prepayments will be credited to the principal in the inverse order of maturity.

6.    SECURITY:

This Note is secured by a Mortgage and Security Agreement (the "Mortgage") on real property located in Broward County, Florida (the "Mortgaged Property"). Holder is entitled to the benefit of this security.

7.    DEFAULT:

If any installment of principal or interest is not fully paid within three (3) days after the same becomes due and payable, or if any other monetary obligation due under this Note is not paid in full within three (3) days after the same becomes due and payable; or if any non-monetary term, covenant, agreement or stipulation of this Note, the Mortgage or of any other instrument securing this Note is not promptly and fully performed within thirty (30) days after notice, or upon assigning for the benefit of creditors or the commencement of any bankruptcy, insolvency or reorganization proceedings, the entire indebtedness (including principal and accrued interest) remaining unpaid, shall, at the option of Holder, become immediately due, payable and collectable, and while in default, this Note and any deferred interest shall bear interest at the highest rate permitted by the laws of the State of Florida.

8.    NO WAIVER BY HOLDER:

2

No delay or failure on the part of Holder in exercising any power or right under this Note shall operate as a waiver of any power or right, nor shall any single or partial exercise of any power or right preclude further exercise of that power or right. The rights and remedies specified in this Note are cumulative and not exclusive of any rights or remedies that Holder may otherwise possess.

9.    <u>MODIFICATION</u>:

The terms of this Note shall not be varied, waived or modified except by a writing signed by the party to be charged.

10.    <u>WAIVER OF PRESENTMENT, ET AL</u>:

Maker and all parties hereto, including endorsers and guarantors, hereby severally waive presentment for payment, protest and notice of protest and nonpayment of this Note, demand, or notice of maturity, and each further consents that Holder may from time to time extend the time for payment of any installment or any part thereof or may release any collateral securing this Note without releasing any endorsers or guarantors and without notice to any of them.

11.    <u>RECALCULATION OF INTEREST</u>:

(a)    Notwithstanding any provision of this Note, or the other loan documents securing this Note, or any combination, to the contrary, the parties intend that no provision of this Note or the other loan documents be interpreted, construed, applied, or enforced so as to permit or require the payment or collection of interest in excess of the highest rate of interest permitted to be paid or collected by the laws of the State of Florida with respect to this transaction (the "Maximum Permitted Rate"). If, however, any such provision is so interpreted, construed, applied, or enforced, then the parties intend: (i) that such provision automatically shall be deemed reformed <u>nunc pro tunc</u> so as to require payment only of interest at the Maximum Permitted Rate; and (ii) if interest payments in excess of such Maximum Permitted Rate have been received, that the amount of such excess shall be deemed credited <u>nunc pro tunc</u> in reduction of the then outstanding principal amount of this obligation, together with interest at such Maximum Permitted Rate. In connection with all calculations to determine the Maximum Permitted Rate, the parties intend: first, that all charges be excluded to the extent they are properly excludable under the usury laws of the State of Florida, as they from time to time are determined to apply to this obligation; and, second, that all charges that may be "spread" in the manner provided by Section 687.03(3), Florida Statutes or any similar successor law, be spread in the manner provided by such statute.

(b)    In the event subsequent laws of the State of Florida increase the highest rate of interest allowed under the laws of the State of Florida, which are applicable to this Note, then the provisions of this Note shall be deemed to include such higher rate of interest, except to the extent that such higher rate would be usurious if applied to the unpaid principal balance hereof.

(c)    Wherever authorized by law, interest shall be calculated at such higher rate which may be applicable in accordance with Florida Statutes, Section 687.12 and Chapter 665, Florida Statutes, or 12 U.S.C. Section 85, if applicable.

3

12.    COLLECTION COST/LATE FEE:

(a)    Time is of the essence hereunder, and it is further agreed that Maker and any endorser and guarantor, jointly and severally, shall pay all costs of collection of the indebtedness evidenced hereby, including a reasonable attorneys' fee, legal assistants' fee and court costs, including appellate fees, and fees incurred in connection with bankruptcy and creditor's reorganization proceedings and probate and estate administration proceedings, and other costs, and any other expense incurred by Holder as a result of Maker's failure to pay any installment of principal or any interest when due.

(b)    It is further agreed that Maker and any endorser and guarantor, jointly and severally, shall pay a late charge to Holder equal to five percent (5%) of the amount of any payment which is not received by Holder within three (3) days of the date such payment was due Holder, to compensate for Holder's expense of handling the delinquency, which late charge must be received by Holder with the payment then due. This late charge applies individually to all payments more than three (3) days past due and there shall be no daily prorated adjustment of such charge. The date payment is due under this Note is the date set forth in Paragraph 1 hereof.

(c)    Holder shall be entitled to collect from Maker any and all applicable state sales and/or use tax imposed on the sums due under this Note, including the foregoing collection costs.

(d)    In the event Maker shall pay any installment of principal or interest by check or other negotiable instrument which is dishonored or not paid by the drawer's bank, financial institution or any other drawee for any reason, a processing fee in the amount of up to FIFTY and no/100 ($50.00) Dollars for each such check or negotiable instrument that is dishonored or not paid shall be due and payable to Holder in addition to all amounts due on account of any such installment. Said processing fee shall be payable on the due date of the next regular installment of principal and interest and may be deducted by Holder from the next payment made by Maker.

13.    FLORIDA LAW:

The provisions of this Note are to be construed according to and are to be governed by the laws of the State of Florida.

14.    USE OF PROCEEDS:

Maker represents to Holder that the proceeds of the loan evidenced hereby are being used solely for business and commercial purposes.

15.    DOCUMENTARY STAMPS PAID:

Florida documentary stamps assessed on this Promissory Note have been paid, affixed to the original Mortgage securing this Note.

16.    RIGHT OF SETOFF:

4

To the extent permitted by applicable law, Holder reserves a right of setoff in all Maker's accounts with Holder (whether checking, savings, or some other account). This includes all accounts Maker holds jointly with someone else and all accounts Maker may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Maker authorizes Holder, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Holder's option, to administratively freeze all such accounts to allow Holder to protect Holder's charge and setoff rights provided in this paragraph.

17.    <u>PAYMENTS BY GUARANTOR:</u>

The Maker agrees that all payments of any sums due hereunder by a Guarantor of this Note shall be final, and if any such payment is recovered in any bankruptcy, insolvency or similar proceeding instituted by or against the Guarantor, the Maker's indebtedness under this Note shall be automatically reinstated in respect of the indebtedness as to which payment is so recovered.

18.    <u>WAIVER OF RIGHT TO JURY TRIAL:</u>

MAKER, HOLDER AND ANY GUARANTOR NOW OR HEREAFTER LIABLE FOR PAYMENT OF ANY SUMS DUE HEREUNDER, BY EXECUTING THIS NOTE OR ANY OTHER DOCUMENT CREATING ANY LIABILITY IN FAVOR OF HOLDER, AND HOLDER, BY THE ACCEPTANCE OF DELIVERY OF THIS DOCUMENT, WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION; WHETHER ARISING IN CONTRACT OR TORT, BY STATUTE OR OTHERWISE, IN ANY WAY RELATED TO THIS NOTE. THIS PROVISION IS A MATERIAL INDUCEMENT FOR HOLDER TO EXTEND CREDIT TO MAKER AND NO WAIVER OR LIMITATION OF THIS PARAGRAPH BY HOLDER SHALL BE EFFECTIVE UNLESS IN WRITING AND MANUALLY SIGNED ON HOLDER'S BEHALF.

IN WITNESS WHEREOF, and intending to be legally bound, the undersigned has caused this Note to be executed and delivered on the date stated above.

MAKER:

OCEANSIDE MILE, LLC, a Florida limited liability company

By: _____
       Arturo S. Rubinstein, Manager

5

**EXHIBIT "D"**

Prepared by and return to:
PHILIP J. MORGAN, ESQ.
BRINKLEY MORGAN
200 E. Las Olas Blvd. - Suite 1900
Fort Lauderdale, FL 33301

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (this "Mortgage") made this _____ day of October, 2014, between **OCEANSIDE MILE, LLC, a Florida limited liability company** (hereinafter called "Mortgagor", whether one or more), whose address is 18034 Ventura Blvd., #276, Encino, CA 91316, and **STONEGATE BANK, a Florida banking corporation** (hereinafter called "Mortgagee", whether one or more), whose business address is 1430 N. Federal Highway, Fort Lauderdale, FL 33304.

### W I T N E S S E T H:

That Mortgagor, for and in consideration of the sum named in the Promissory Note hereinafter described, and other valuable considerations, receipt of which is hereby acknowledged, do hereby grant, bargain, sell, alien, remise, release, convey and confirm unto Mortgagee, its successors and assigns, all of the following described premises, situate in the County of Broward, State of Florida, and more particularly described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

TOGETHER with all tangible and intangible personal property now or hereafter owned, used or received by Mortgagor on, about or in connection with the premises or any business operated by Mortgagor on the premises together with all proceeds from the sale thereof, including but not limited to the following: (a) all and singular the fixtures appurtenant thereto, which shall include, insofar as they are now or may hereafter belong to or be used with the premises or any buildings or improvements thereon and whether attached or detached, all goods, equipment, furnishings, accounts receivable, accounts, rents, deposits, cash, profits, condemnation awards, insurance proceeds and refunds of insurance premiums now or hereafter owned, used, or received by Mortgagor or Mortgagee on, about or in connection with the herein described premises, together with all proceeds of all non-monetary collateral when sold; as well as (i) the rights in or to the proceeds of any fire or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) any debtor's interest as Lessor in any present or future lease or rights to income growing out of the use or occupancy of any part of the premises, whether pursuant to lease or otherwise; (b) all licenses, including alcoholic beverage licenses, franchises, contract rights, patents, trademarks, trade names and trade processes used by Mortgagor in connection with the premises and the good will and business records, computer records and software, of any business conducted now or hereafter by Mortgagor on said premises; (c) a foreclosure of the indebtedness secured by this Mortgage (or a voluntary conveyance in lieu of foreclosure) shall include foreclosure and/or transfer of all of Mortgagor's right, title and interest in all of the foregoing items of tangible and intangible property.

Together with all and singular the buildings, improvements, ways, streets, alleys, passages, waters, water courses, rights, liberties, privileges, easements, tenements, hereditaments, and appurtenances thereunto appertaining, and the reversions and remainders, rents, issues, and profits thereof, all of the said property, whether real or personal, being hereinafter designated as "the premises".

Together with any and all renewals, replacements, substitutions, accessions, proceeds, products or additions of or to the premises, the incomes and the intangible collateral, any after acquired property adjacent to the premises and used in connection with the premises or any business of Mortgagor located on the premises; and any and all monies and other property that from time to time may, either by delivery to Mortgagee or by any instrument (including this Mortgage) be subjected to such lien and security interest by Mortgagor, or by anyone on behalf of Mortgagor, or with the consent of Mortgagor, or which otherwise may come into the possession or otherwise be subject to the control of Mortgagee pursuant to this Mortgage or the other loan documents, or both.

TO HAVE AND TO HOLD the same, and all the estate, right, title, interest, homestead, dower, right of dower, separate estate, property, possession, claim and demand whatsoever in law and in equity of Mortgagor in and to the same unto Mortgagee, in fee simple, forever.

AND Mortgagor does hereby covenant with Mortgagee that they are indefeasibly seized of the said premises in fee simple and have full power and lawful right to convey the same as aforesaid and that it shall be lawful for Mortgagee at all times hereafter peaceably and quietly to enter upon, hold, occupy and enjoy the premises and every part thereof, that the premises and every part thereof are free from all encumbrances; that they will make such other and further assurances to perfect the

-2-

fee simple title to the premises in Mortgagee, as may hereafter reasonably be required; and do hereby fully warrant said title to the premises and every part thereof and will defend the same against the lawful claim of all persons whomsoever.

PROVIDED, ALWAYS, that if Mortgagor, shall pay to Mortgagee all sums due under the terms of this Mortgage and all the indebtedness evidenced by a certain Promissory Note of even date herewith (the "Note"), which is incorporated herein by reference, and is signed by Mortgagor and payable to the order of Mortgagee in the principal sum of **$5,202,000.00** bearing interest at the rate set forth therein with principal and interest payable as set forth therein, the last installment of the entire unpaid principal and interest to become due and payable on **October ____, 2024**, and as thereafter modified, renewed or extended, together with all interest thereon, and; FURTHER PROVIDED, that if Mortgagor shall duly, promptly and fully perform and comply with and abide by all of the covenants and agreements of the said Note and this Mortgage and every other instrument securing said Note, then this Mortgage and the estate hereby created shall cease and be null and void.

AND PROVIDED ALWAYS, and this Mortgage is given upon this express condition, that if said Mortgagor shall pay the indebtedness evidenced by said Note and all renewals and extensions thereof, together with interest thereon and all other sums secured by this Mortgage and shall fully perform and comply with all the covenants and agreements of said Note and this Mortgage and every other instrument securing said Note, then this Mortgage and the estate hereby granted shall cease and be null and void.

AND Mortgagor covenant and agree to and with Mortgagee as follows:

1.      Mortgagor shall pay the principal and interest and the various and sundry sums of money payable by virtue of said Note and this Mortgage and every other instrument securing said Note, promptly on the days the same become due, and Mortgagor will promptly perform and comply with each and every other covenant and agreement in said Note and this Mortgage and every other instrument securing said Note.

2.      Mortgagor shall pay and discharge as the same become due all taxes and assessments (except income taxes of Mortgagee) that may accrue, be levied, or assessed upon the premises or any part thereof, or which may be or become a lien prior to the lien of this Mortgage or have priority in payment to the debt secured hereby, or upon Mortgagee's interest therein or upon this Mortgage or the indebtedness or evidence of indebtedness secured hereby, without regard to any law heretofore or hereafter enacted imposing payment of the whole or any part thereof upon Mortgagee; upon the passage of any law imposing the payment of the whole or any part thereof upon Mortgagee or upon the rendering by any appellate court of competent jurisdiction of a decision that the undertaking by Mortgagor to pay such taxes is legally inoperative, then the indebtedness hereby secured, without deduction, shall, at the option of Mortgagee, become immediately due and payable, notwithstanding anything contained in the Mortgage or any law heretofore or hereafter enacted; and Mortgagor shall not suffer or permit any such taxes or assessments on the said premises, which may be or become a lien on the premises, to become or remain delinquent or permit any part thereof or any interest therein to be sold for any taxes or assessments; AND FURTHER, shall furnish annually to Mortgagee, at its principal office, at least thirty (30) days prior to the date when they would become delinquent,

-3-

receipts of the proper officer showing full payment of all such taxes and assessments. If Mortgagor shall fail to timely deliver such receipts to Mortgagee as so required, Mortgagee, at its option, may have the public records of the County wherein the premises is situated searched to determine that all such taxes and assessments have been paid. If such search is made, Mortgagor agree to pay the costs of such search, which cost shall be paid from escrow funds in Mortgagee's, or its agent's possession, if any; or if not, same be added to the indebtedness secured by this Mortgage. If Mortgagor shall fail to pay and discharge as the same become due all taxes and assessments (except income taxes of Mortgagee) that may accrue, be levied, or assessed upon the premises or any part thereof, the interest rate charged under the Note secured hereby shall be increased by five percent (5%) per annum until such delinquent taxes or assessments are paid in full and a paid receipt is provided to Mortgagee.

3.      Mortgagor shall pay all debts, claims, or other charges that may become liens against the premises or any part thereof for repairs or improvements that may have been, or may hereafter be, made on the premises and shall not permit any lien or encumbrance of any kind which might become superior to the title of Mortgagee or the lien of this Mortgage to accrue or remain on the premises or any part thereof.

4.      Mortgagor shall, at Mortgagor's sole expense, provide, constantly maintain and deliver to Mortgagee policies of fire and extended coverage insurance and an insurance policy upon the buildings, improvements and personal property now or hereafter situate on the premises and shall provide, constantly maintain and deliver to Mortgagee such liability insurance, rent insurance against abatement of rents, and other insurance against such insurable hazards, casualties and contingencies as may be required by Mortgagee. The aforesaid insurance must be upon policy forms and with companies in form and in amounts of coverage satisfactory to Mortgagee. Mortgagor shall assign and deliver to Mortgagee, with satisfactory mortgagee clauses and with loss payable solely to Mortgagee, all such insurance policies of any kind or in any amount now or hereafter so issued, upon or in respect to the premises, together with paid receipts for current year's premium thereon; and not less than twenty (20) days in advance of the expiration of such policy, to deliver to said Mortgagee a renewal thereof, together with a paid receipt for the premium of such renewal. There shall be no such insurance placed on any of said buildings, any interest therein or part thereof, unless in the form and with the loss payable as aforesaid. Mortgagee shall have the right to assign all such policies to any assignee of this Mortgagee or to the purchaser at any foreclosure sale hereunder, or any sale in lieu of foreclosure. Mortgagor shall give Mortgagee immediate notice at its principal office of any loss or damage to the premises caused by any casualty. In the event of loss under any policy required to be deposited with Mortgagee, the proceeds thereof shall be paid by the insurer to Mortgagee, who shall have the right to settle or compromise claims under all such policies and to demand, receive and receipt for all monies becoming payable thereunder. Mortgagee, in its sole discretion, shall apply the proceeds of such policy paid by the insurer to Mortgagee, wholly or partially after deducting all costs of collection, including reasonable attorneys' fees, either as a payment on account of such part of the indebtedness secured hereby as Mortgagee may elect, without affecting the amount or time for payment of other installments required hereunder, whether or not then due or payable, or toward the alteration, reconstruction, repair or restoration of the premises, either to the portion thereof damaged by such loss thereon or any portion thereof. If any such insurance proceeds are applied to the restoration or repair of the premises, Mortgagee shall not be liable for supervising such restoration or repair or for supervising the disbursement of such insurance proceeds therefor, but such disbursement

-4-

shall proceed in a manner acceptable to Mortgagee and be disbursed by an escrow agent acceptable to Mortgagee, which shall be designed to include reasonable controls to assure that such restoration or repair will be promptly completed in a workmanlike manner and paid for in full, free of construction liens; and, in the sole discretion of Mortgagee, such disbursement shall be similar to the manner in which major commercial banks permit construction loan advances.  All costs and fees, including Mortgagee's attorneys' fees and the Escrow Agent's fees, arising out of the disbursement of the insurance proceeds shall be paid by Mortgagor and shall be paid from the insurance proceeds.  In the event Mortgagee authorizes the use of the insurance proceeds for restoration or repair, Mortgagor shall deposit with Mortgagee prior to commencing any such restoration or repair the amount, if any, by which the cost of such restoration or repair exceeds the amount of such insurance proceeds, which amount shall be disbursed to pay costs of such restoration or repair prior to, and in the same manner as, such insurance proceeds.  Any surplus which may remain after payment of all costs of restoration or repair may, at the option of Mortgagee, be applied to reduction of the indebtedness hereby secured, in any order which Mortgagee may determine, whether then matured or to mature in the future, or be paid to Mortgagor, as its interest may appear, the choice of application to be solely at the discretion of Mortgagee.  In no event shall Mortgagee be held responsible for the failure to pay for any insurance required hereby or for any loss or damage growing out of a defect in any policy thereof or growing out of any failure of any insurance company to pay for any loss or damage insured against or for failure by Mortgagee to obtain such insurance or to collect the proceeds thereof.  Further, Mortgagee shall not be liable for the insolvency or irresponsibility or any company approved or accepted or selected by Mortgagee.

5.    Mortgagee at any time, in its sole discretion, may require Mortgagor to make monthly deposits with Mortgagee of a sum equivalent to one-twelfth (1/12) of the annual real and tangible personal property taxes assessed with respect to the premises and one-twelfth (1/12) of the annual premiums for all insurance required to be maintained pursuant to this Mortgage.  Such monthly deposits, if required, shall be paid on the same date each month as the monthly installment of principal and/or interest is due.  The amount of such taxes, assessments and premiums, when unknown, will be estimated by Mortgagee in good faith.  Such deposits may be commingled with Mortgagee's general funds; and Mortgagee will not be liable for any interest or earnings on account of such deposits.  To the extent sufficient, such deposits will be applied by Mortgagee to the payment of such taxes and assessments when due, upon Mortgagor's presentation of bills therefor; but Mortgagee will have no obligation to make any such payment except to the extent of such deposits.  Any insufficiency of such deposits will be paid by Mortgagor to Mortgagee on demand.  Upon any default by Mortgagor under this Mortgage, Mortgagee may apply all such deposits to the Indebtedness in such order as Mortgagee may elect.  The enforceability of Mortgagor's covenants relating to taxes, assessments and insurance will not be altered, diminished, impaired or otherwise affected by the provisions of this Paragraph except insofar as such obligations are actually met by Mortgagor's compliance with this Paragraph.  Mortgagee from time to time, at its sole option, may waive and thereafter reinstate any or all of the provisions of this Paragraph.  While any such waiver is in effect, Mortgagor will pay all taxes, assessments and premiums as provided elsewhere in this Mortgage.

6.    Mortgagor shall keep the premises in good condition and repair, reasonable wear and tear excepted.  Mortgagor shall not permit or perform any act which in any way impairs the value of the premises, nor remove any fixture nor remove nor demolish any building or improvement located

-5-

on the premises, nor alter the arrangement, design or structural character thereof, nor make any repairs which involve removal of structural parts or the exposure of the interior of such building to the elements, nor erect or permit to be erected any new buildings on the premises or add any addition to existing improvements without the prior written consent of Mortgagee.

7.    As a condition to the extension by Mortgagee to Mortgagor of the loan evidenced by the Note, Mortgagor has furnished financial statements to Mortgagee. In addition, Mortgagor shall furnish or caused to be furnished to Mortgagee (i) on an annual basis and within thirty (30) days of year end (or more frequently if required by Mortgagee), then current dated and certified (by Mortgagor) internally prepared corporate financial statements for Mortgagor; (ii) on an annual basis, within thirty (30) days of the anniversary date of the prior year's financial statement provided to Mortgagee (or more frequently if required by Mortgagee) then current dated and certified (by Arturo Sergio Rubinstein or Eyal Gamliel, as applicable) personal financial statements of Arturo Sergio Rubinstein and Eyal Gamliel; (iii) within thirty (30) days of timely filing but in no event later than September 15th of each year, Mortgagor and Mayo Group, LLC shall submit to Mortgagee copies of all income tax returns including schedules, K-1's and extensions; (iv) within fifteen (15) days of timely filing, but in no event later than September 15th of each year, Arturo Rubinstein and Eyal Gamliel shall submit to Bank copies of all income tax returns including schedules, K-1's and extensions; (v) such other financial or project information required by Mortgagee in form and substance satisfactory to Mortgagee for Mortgagor and for each guarantor of Mortgagor's obligations to Mortgagee; (vi) forthwith after the issuance thereof, any other financial statements of Mortgagor, for each guarantor of Mortgagor's obligations to Mortgagee prepared by an accountant and furnished directly or indirectly to any other creditor; and (vii) on an annual basis, Mortgagee shall have the right to conduct an inspection of the premises. The form of all financial information required to be furnished to Mortgagee shall be subject to approval by Mortgagee and shall include such supplemental schedules as Mortgagee may reasonably require. Mortgagor acknowledge and agree that this provision is a material consideration of the granting of this Mortgage, and that if Mortgagor and all Guarantors, co-makers and endorsers fail or refuse to deliver such financial statements, schedules, rent rolls, notices, reports and/or tax returns that such failure to deliver such financial statements, schedules, rent rolls, notices, reports and/or tax returns, shall be considered an Event of Default, and Mortgagee may, at its option, elect to accelerate the remaining unpaid principal balance due and payable on the Note, together with all accrued interest thereon, as if Mortgagor had defaulted in a payment due and payable under the terms of the Note.

8.    Mortgagor further represent, warrant and covenant to and with Mortgagee as follows:

A.    To the best of Mortgagor's knowledge, none of the real property owned and/or occupied by Mortgagor and located in the State of Florida, including, but not limited to, the property, has ever been used by previous owners and/or operators to refine, produce, transfer, process or transport any hazardous substances, toxic wastes, toxic chemicals, petroleum substances, asbestos, urea formaldehyde, foam insulation, transformers or other equipment which contain dielectric fluid containing levels of polychlorinated biphenyls or other governmentally regulated substances (hereinafter called "Hazardous Substances"). Mortgagor has not in the past, nor will Mortgagor in the future, use said real property, including, but not limited to, the premises, for the purpose of refining, producing, transferring, processing or transporting said Hazardous Substances.

-6-

B.    No lien has attached to any revenues or any real or personal property owned by Mortgagor and located in the State of Florida, including but not limited to, the premises, as a result of any governmental entity expending monies as a result of an intentional or unintentional action or omission of Mortgagor or any previous owner and/or operator of said real property, including, but not limited to, the premises, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of Hazardous Substances into or onto lands or waters located within the State of Florida or onto lands or into waters outside the jurisdiction of the State of Florida, where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State of Florida.

C.    Mortgagor has not received a summons, citation, directive, letter or other communication, written or oral, from any governmental entity concerning any intentional or unintentional action or omission on Mortgagor's part, or for which it is alleged Mortgagor are or may be responsible, resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of Hazardous Substances into the waters or onto lands located within the State of Florida, or onto lands or into waters outside the jurisdiction of the State of Florida resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State of Florida.

D.    Mortgagor has conducted a site inspection of the premises to determine the presence of conditions indicating, as well as other tests to determine, the presence of Hazardous Substances and has found no evidence of the presence of any such Hazardous Substances on or about the premises.

E.    Mortgagor shall not cause or permit to exist as a result of an intentional or unintentional action or omission on its part or for which it is responsible, a releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping of any Hazardous Substances into waters or onto lands located within the State of Florida or onto the lands or into the waters outside the jurisdiction of the State of Florida where damage may result to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State of Florida, unless said release, spill, leak, etc. is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal or state governmental authorities.

F.    In the event that there shall be filed a lien against the premises by any governmental entity as a result of the need to expend or the actual expending of monies arising from an intentional or unintentional action or omission of Mortgagor of for which Mortgagor are responsible, resulting in the releasing, spilling, leaking, pumping, emitting, pouring, emptying or dumping of any Hazardous Substances into the waters or onto lands located within the State of Florida or onto the lands or into the waters outside the jurisdiction of the State of Florida when damage may result to the lands, waters, fish, shellfish, wildlife, biota, air and other resources, owned, managed, held in trust or otherwise controlled by the State of Florida; then Mortgagor shall, within thirty (30) days from the date that Mortgagor are given notice that the lien has been placed against the premises or within such shorter period of time in the event that the State of Florida, the United States government or any other governmental entity has commenced steps to cause the premises to be

-7-

sold pursuant to said lien either (i) pay the claim and remove the lien from the premises; or (ii) furnish (a) a bond satisfactory to the title insurance company insuring Mortgagee's interest in the premises and Mortgagee in the amount of the claim out of which the lien arises, or (b) a cash deposit in the amount of the claim out of which the lien arises, or (c) other security satisfactory to Mortgagee in an amount sufficient to discharge the claim out of which the lien arises.

9.    Mortgagor shall comply with all laws, ordinances, regulations, conditions and restrictions affecting the premises, and shall not suffer or permit any violations thereof.

10.    If Mortgagor fail to insure the premises, or to pay and furnish receipts for all taxes and assessments, or to pay debts, claims or other charges for repairs and improvements, or to keep the premises in good condition and repair, all as provided herein, Mortgagee may, at its option, procure such insurance, pay such taxes and assessments, redeem the property from any tax sale, procure such receipts, or enter upon the premises and make such repairs as it may deem necessary; and Mortgagor shall pay to Mortgagee all sums which it shall have so paid, together with interest thereon at a rate equal to the highest per annum interest rate now allowed by the laws of the State of Florida, from the date the same was paid, and for payment thereof, this Mortgage shall stand as security in like manner and effect as for the payment of the indebtedness referred to above; but the failure of Mortgagee to procure such insurance, to pay such taxes and assessments, to redeem the property from any tax sale, or to make repairs shall in no way render Mortgagee liable to Mortgagor. If Mortgagee shall elect to advance insurance premiums, taxes, or assessments, or redeem from tax sale, the receipt of the insurance company or of the proper tax official shall be conclusive evidence of the amount, validity, and the fact of payment thereof.

11.    Mortgagor shall pay to Mortgagee all sums, including costs, expenses, and reasonable agent's or attorneys' fees, which it may expend or become obligated to pay in any proceedings, legal or otherwise, to prevent the commission of waste to establish or sustain the lien of this Mortgage or its priority, or to defend against liens, claims, rights, estates, easements or restrictions, asserting priority to this Mortgage; in payment, settlement, discharge or release of any asserted lien, claim, right, easement or restriction made upon advice of competent counsel that the same is superior to the lien of this Mortgage; for title insurance, abstract of title or extension thereof; or in connection with any suit to enforce or foreclose this Mortgage or to recover any sums hereby secured. All such sums so paid by Mortgagee shall bear interest at a rate equal to the highest per annum interest rate allowed by the laws of the State of Florida, until paid, and for payment of such sums and interest, this Mortgage shall stand as security. In the event subsequent laws of the State of Florida increase the highest rate of interest now allowed under the laws of the State of Florida which are applicable to this Mortgage and the Note secured hereby, then the interest rate now allowed under the laws of the State of Florida shall be deemed to include such higher rate of interest except to the extent that such higher rate would be usurious if applied to the unpaid principal balance hereof.

12.    That if any of the sums of money payable under or secured by the Mortgage be not fully paid within three (3) days of when the same become due and payable, or if there be any breach of this Mortgage or default herein on the part of Mortgagor, or if any non-monetary term, covenant, agreement or stipulation of said Note, Guaranty, or of this Mortgage or of any other instrument securing said Note is not promptly and fully performed within thirty (30) days after notice, then in any

-8-

and each such event, the aggregate sum secured hereby, except unearned interest, less previous payments, if any, shall, at the option of Mortgagee, become due and payable forthwith immediately as fully and completely as if originally stipulated then to be paid, anything in said Note or in this Mortgage to the contrary notwithstanding, together with, without limitation, reasonable attorneys' fees and paralegal's fees, through all collection, trial, appellate and administrative procedures, and thereupon or thereafter, at the option of Mortgagee, without notice or demand, suit at law or in equity, theretofore or thereafter begun, may be prosecuted as if all sums hereby secured had matured prior to its institution.

13.    If any action or proceeding shall be commenced by any person other than Mortgagee (except an action to foreclose this Mortgage or to collect the debt secured hereby) to which action or proceeding Mortgagee is made a party, or in which it shall become necessary to defend or uphold the lien of this Mortgage, all sums paid by Mortgagee for the expenses of any such litigation (including reasonable attorneys' fees through all trial, appellate and administrative levels) shall be immediately due and payable by Mortgagor, together with interest thereon at the highest rate allowed by the laws of the State of Florida, and shall be secured by this Mortgage.

14.    If the indebtedness secured hereby is now or hereafter further secured by security agreements, pledges, contracts of guarantee, assignment of leases or other securities, or if the premises hereby encumbered consists of more than one (1) parcel, Mortgagee may, at Mortgagee's option, exhaust any one or more of said securities and the security hereunder, or such parcels of the premises, either concurrently or independently, and in such order as Mortgagee may determine.

15.    Mortgagee shall have the right to enforce the lien of this Mortgage against all or any portion of the premises and to cause all or any portion of said premises to be sold for payment and satisfaction of any decree of foreclosure without any right of Mortgagor or those claiming under Mortgagor to any marshaling of liens, exonerations of security or other similar rights or remedies.

16.    No delay or failure of Mortgagee to exercise any option herein given or reserved shall constitute a waiver of such option or estop Mortgagee from afterwards exercising same or any other option at any time and the payment or contracting to pay by Mortgagee of anything Mortgagor has herein agreed to pay shall not constitute a waiver of the default of Mortgagor in failing to make said payments and shall not estop Mortgagee from foreclosing this Mortgage on account of such failure of Mortgagor. The rights, options, powers, and remedies herein provided shall be cumulative and no one or more of them shall be exclusive of the other or others, or of any right or remedy now or hereafter given or allowed by law.

17.    The granting to the maker or endorser of the Note secured hereby, Mortgagor, or to any other person of an extension or extensions of time of payment of the Note or any sum due under or secured by this Mortgage, or the taking of other or additional security for payment thereof, or waiver by Mortgagee of or failure to enforce any covenant or stipulation of the Note or this Mortgage or to declare any default thereunder shall not operate as a waiver of any subsequent default or affect the right of Mortgagee to exercise any right hereunder not expressly waived in writing, nor operate as a release from any personal liability upon the Note or under any covenant or stipulation of the

-9-

Mortgage notwithstanding that the original makers or endorsers are not party to such agreement of modification, extension, or note, nor had any notice thereof.

18.    This Mortgage shall secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made by Mortgagee to Mortgagor within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time pursuant to advancements made to Mortgagor, but the total amount so secured at any one time shall not exceed a maximum principal amount equal to twice the principal amount of the Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the premises, with interest on such disbursements at the rate applicable under the Note from and after maturity.

19.    In the event damages are awarded for the taking of or injury to the premises, whether such taking or injury be done under the power of eminent domain or otherwise, all such damages shall be paid to Mortgagee to be applied as a payment on account of such part of the indebtedness secured hereby, as Mortgagee may elect, without affecting the amount or time for payment for other installments required thereunder, whether or not said indebtedness is then due and payable.

20.    Mortgagor agree to furnish to Mortgagee upon request satisfactory written estoppel certificates reciting Mortgage Note principal balance and interest due, and indicating existing defenses or set-offs, if any.

21.    The rents, income and profits of all and every part of the premises are hereby specifically pledged to the payment of the debt and all other obligations hereby secured. If default shall be made in the payment of the said indebtedness or any part thereof, or in the performance of any covenant or agreement of this Mortgage, or of the said indebtedness, Mortgagee shall have the right forthwith and without notice to enter into and upon the premises, take possession thereof, and collect said rent, income, and profits, with or without the appointment of a receiver and regardless of the adequacy of the security or the solvency of Mortgagor, shall be a matter of right to Mortgagee. All such net income, after payment of any collection, management and attorneys' fees shall be applied toward the payment of any advances made by Mortgagee or in reduction of any indebtedness, including interest thereon, hereby secured in such manner or proportion as Mortgagee may elect.

22.    It is further covenanted and agreed by said parties that in the event of suit being filed to foreclose this Mortgage Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of Mortgagee's choice without bond of all and singular the mortgaged property, and of all rents, income, profits, issues and revenues thereof from whatsoever source derived; and thereupon it is hereby expressly covenanted and agreed that the Court shall forthwith appoint such receiver with usual powers and duties of receivers in like cases; and said appointments shall be made by the court as a matter of strict right to Mortgagee, and without reference to the adequacy or inadequacy of the value of the property hereby mortgaged, or to the solvency or insolvency of Mortgagor or any other party defendant to such suit. Mortgagor hereby specifically waive the right to object to the appointment of a receiver as aforesaid

-10-

and hereby expressly consents that such appointment shall be made as an admitted equity and as a matter of absolute right to Mortgagee and that the same may be done without notice to Mortgagor.

23.    Mortgagor, without first obtaining the written consent of Mortgagee hereto, shall not (a) enter into any new leases affecting the premises, (b) assign the rents, or any part thereof, from the premises, (c) consent to the cancellation or surrender of any lease of the premises, or any part thereof, now existing or hereafter to be made, having an unexpired term of one (1) year or more, (d) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (e) collect any installment of rent in advance of the respective dates prescribed in the assigned leases for payment thereof other than first and last month's rent and an amount equal to one (1) month's advance rent in the form of a security deposit for the last month of any lease term (hereinafter referred to as "Permitted Advance Rental Payments"). Notwithstanding the foregoing, Mortgagor shall be permitted to continue to operate the hotel at the premises and accept reservation deposits and prepayments from prospective guests.

24.    That Mortgagor will not encumber, by mortgage or otherwise, or allow the creation or filing of any liens against the property, or sell, convey, assign, transfer or otherwise dispose of its interest in the premises, or any part thereof, or change or allow a material change in the identity or control of Mortgagor (other than through death) without first obtaining the prior written consent of Mortgagee to such event, which consent may be withheld in the sole and absolute discretion of Mortgagee, and the whole of the principal sum and interest shall become due at the option of Mortgagee upon such further encumbrance, by mortgage or otherwise, or the sale, conveyance, assignment, transfer, or other disposition, or upon the occurrence of a material change in the identity or control of Mortgagor (other than through death), without such prior written consent of Mortgagee. If Mortgagor are now or hereafter an artificial entity (for example, a corporation, general partnership, limited partnership, trust, tenancy in common, joint venture, etc.); then, without the prior written consent of Mortgagee, any of the following transfers, conveyances or encumbrances, shall constitute a default herein: (i) any transfer, conveyance or encumbrance of all or any interest in such artificial entity or (ii) any transfer, conveyance or encumbrance of all or any interest in any entity or entities directly or indirectly owning an interest in such artificial entity. In the event Mortgagee consents to a sale of the premises and waives its right to accelerate the debt, Mortgagee may impose conditions for such consent, including, without limitations, requirements that the purchaser meet Mortgagee's then existing credit and other standards with respect to similar such loans; that the purchaser specifically assume the obligations to be performed under this Mortgage; that fees be paid to Mortgagee at the time of transfer; that the interest rate be increased; that new title insurance be obtained; that new financing statements be filed; that purchaser agrees to restrictions on further transfers; or that endorsements to existing policies or new hazard insurance policies be obtained. The provisions of this paragraph shall apply to each and every such encumbrance, conveyance, assignment, sale, transfer, or other disposition, regardless of whether or not Mortgagee has consented to, or waived by its action or inaction, its rights hereunder with respect to any such previous further encumbrance, conveyance, assignment, sale, transfer or other disposition. Mortgagee, however, will not consent to (i) any transfer of less than the entire premises, or (ii) any transfer in any form, including but not limited to, a sale and leaseback, second mortgage or junior lien which has the effect of creating additional expense to or charges against the premises.

-11-

25.     If there shall be default under any prior or inferior mortgage and said default shall continue for fifteen (15) days or more, or should any suit be commenced to foreclose any prior or inferior mortgage, then the whole of the principal sum secured hereby shall become due and payable at the option of Mortgagee.  In addition, Mortgagee shall have the right to make payments on any prior mortgage in default, and all such sums paid by Mortgagee, including interest at the highest rate of interest now allowed under the laws of the State of Florida, shall be secured by this Mortgage.

26.     That in the event that Mortgagor shall: (l) consent to the appointment of a receiver, trustee or liquidator of all or a substantial part of Mortgagor's assets, or (2)  be adjudicated a bankrupt or insolvent, or file a voluntary petition in bankruptcy, or admit in writing its inability to pay its debts as they become due, except however, the pending Chapter 11 bankruptcy proceeding in Case No. 02:13-bk-35286-BR, United States Bankruptcy Court, Central District of California, Los Angeles Division, or (3)  make a general assignment for the benefit of creditors, or (4)  file a petition or answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law, or (5) file an answer admitting the material allegations of a petition filed against Mortgagor, in any bankruptcy, reorganization or insolvency proceedings, or (6)  action shall be taken by Mortgagor for the purpose of effecting any of the foregoing, or (7)  any order, judgment or decree shall be entered upon an application of a creditor or Mortgagor by a court of competent jurisdiction approving a petition seeking appointment of a receiver or trustee of all or a substantial part of Mortgagor's assets and such order, judgment or decree shall continue unstayed and in effect for a period of thirty (30) consecutive days, or (8) if any material adverse change shall occur in the financial condition, results of operations, business, property or prospects of Mortgagor or Guarantors, its subsidiaries, parents or affiliates from the condition represented in the application for the financing described in the Loan Commitment (as hereinafter defined), if any or  any supporting documentation, or (9) If any misstatement of fact or omission of any material fact or any fact necessary to make any statement contained therein not materially misleading in any information, exhibit or report furnished to Mortgagee by Mortgagor or Guarantors in connection with the issuance of the Commitment Letter, if any; or (10) the death or dissolution or liquidation of Mortgagor or any of the Guarantors, or (11) if Mortgagor or Guarantors shall fail to meet any of the required financial covenants contained in this Mortgage, the Loan Commitment or the other Loan Documents, or (12) if Mortgagor shall, without the consent of Mortgagee, initiate, join in or consent to any change in any zoning ordinance or classification, transfer or any development rights, any change in any private restrictive covenant, or any change in any other public or private restriction limiting or defining the uses which may be made of the premises Mortgagee may declare the Note hereby secured forthwith due and payable as if all of the said  sums of money were originally stipulated to be paid on such day; and thereupon Mortgagee without notice or demand may prosecute a suit at law or commence the foreclosure of this Mortgage.

27.     Any default under the Note, Mortgage and other loan documents shall constitute a default under any other loan facility of Mortgagor with Mortgagee.  Conversely, any default under any other loan facility of Mortgagor with Mortgagee shall constitute a default under the Note, Mortgage and other loan documents.

28.     A debt service coverage ratio of 1.40x for the premises shall be maintained by Mortgagor through the Maturity Date of the Note secured by this Mortgage based upon the annual cash flow from the premises and the actual principal and interest payments of the loan as evidenced by

-12-

the Note, tested annually.  The debt service coverage ratio is defined as net income plus non-cash items (i.e. depreciation and amortization plus interest expense) divided by principal and interest expense on all of Mortgagor's debt.  In the event the debt service coverage ratio falls below 1.40x, Mortgagor shall have ninety (90) days to cure the deficiency and bring the debt service coverage ratio up to 1.40x or better; or within the ninety (90) day period to cure, Mortgagor shall pay down the outstanding principal balance to achieve a debt service coverage ratio of 1.40x or better.

29.     Mortgagor shall maintain a minimum net worth of $3,200,000.00 through the Maturity Date of the Note, to be measured and determined annually by Mortgagee.

30.     The term "Mortgagor", wherever used herein, shall mean the party or parties executing the Mortgage, jointly and severally, and all the covenants, conditions, and agreements hereof shall bind their respective heirs, executors, administrators, successors and assigns, and shall inure to the benefit of and be available to the successors and assigns of Mortgagee.

31.     The term "Mortgagee", whenever used herein, shall include and bind their respective heirs, executors, administrators, successors and assigns.  The address of the principal office of Mortgagee referred to herein is 1430 N. Federal Highway, Fort Lauderdale, FL 33304 or at such other place as Mortgagee herein may designate in writing.

32.     EACH MORTGAGOR AND MORTGAGEE HEREBY WAIVE TRIAL BY A JURY IN CONNECTION WITH ANY MATTER ARISING HEREUNDER OR RELATING HERETO AND EACH MORTGAGOR CONSENTS TO EXCLUSIVE JURISDICTION AND VENUE FOR ANY ACTION, SUIT, OR OTHER LEGAL PROCEEDING ARISING UNDER OR RELATING TO THIS MORTGAGE OR THE NOTE IN THE APPROPRIATE COURT OF COMPETENT JURISDICTION IN THE COUNTY IN WHICH THE PREMISES IS LOCATED.

33.     The provisions of this Mortgage shall be deemed severable, so that if any provision hereof is declared invalid under the laws of the State of Florida, or of the United States, all other provisions of this Mortgage shall continue in full force and effect.

34.     Mortgagor agrees that it will fully perform, comply with and abide by each and every one of the terms, covenants and agreements contained and set forth in the certain Loan Commitment by and between the parties hereto, dated September 9, 2014, and any amendments thereto (the "Loan Commitment"), relating to this Mortgage, executed copies of which are in the possession of Mortgagor and Mortgagee. Any default under or breach by Mortgagor of said Loan Commitment or other loan documents shall, at the option of Mortgagee, be an event of default under the terms of this Mortgage.

IN WITNESS WHEREOF Mortgagor has executed this instrument under seal the day and year first above written.

Signed, sealed and delivered
in the presence of:

OCEANSIDE MILE, LLC, a Florida limited liability company

_____
(Witness # 1 - Signature)

By:_____
    Arturo S. Rubinstein, Manager

_____
(Witness # 1 - Printed Name)

_____
(Witness # 2 - Signature)

_____
(Witness # 2 - Printed Name)

STATE OF FLORIDA
COUNTY OF BROWARD

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, appeared Arturo S. Rubinstein, Manager of Oceanside Mile, LLC, a Florida limited liability company, who is personally known to me to be the person described in and who executed the foregoing instrument or who have produced his driver's license as identification and acknowledged before me that he executed the same.

WITNESS my hand and official seal in the County and State last aforesaid this _____ day of October, 2014.

_____
NOTARY PUBLIC

_____
(Printed Name of Notary)

My Commission expires:          (NOTARY STAMP)

My Commission No. is:

-14-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
633 W. Fifth Street, 51st Floor, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): ***NOTICE OF MOTION AND MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION, OCEANSIDE MILE LLC, FOR AN ORDER AUTHORIZING EXTENSIONS OF FINAL POST-PETITION FINANCING BY THIRD PARTY LENDER, PURSUANT TO BANKRUPTCY CODE § 364(c), ON A SECURED BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 10, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Craig H Averch            caverch@whitecase.com
Michael N. Berke          Michael.berke@berkeslaw.com
Sandford L. Frey          sfrey@cmkllp.com
Stuart I. Koenig          skoenig@cmkllp.com
Craig G. Margulies        craig@marguliesfaithlaw.com; staci@marguliesfaithlaw.com;
                          mhillel@marguliesfaithlaw.com; fahim@marguliesfaithlaw.com
Ron Maroko                ron.maroko@usdoj.gov
Charles Shamash           cs@locs.com; generalbox@locs.com
US Trustee (LA)           ustpregion16.la.ecf@usdoj.gov
Marta C. Wade             mwade@cmkllp.com; knielsen@cmkllp.com

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**: On (*date*) October 10, 2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell
U.S. Bankruptcy Court
255 E. Temple St.
Los Angeles, CA 90012

☒ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 10, 2014 | Kelli Nielsen | |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## 2. SERVED BY UNITED STATES MAIL

Oceanside Mile LLC
dba Seabonay Beach Resort
1546 E 14th Street
Los Angeles, CA 90021

Art Connection
Ofer Sadik
2860 Center Port Cir
Pompano Beach, FL 33064

CCTVGUY INC
Boaz Vaknin
3740 N. 55th Ave.
Hollywood, FL 33021-2209

First Citizens Bank
PO Box 27131
Raleigh, NC 27611-7131

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Kodsi Law Firm PA
Paul D Gottfried Esq
1855 Griffin Rd Suite A-370
Dania Beach, FL 33004

Ofer Manor Laundry Service
1083 NW 124th Terrace
Sunrise, FL 33323

Town of Hillsboro Beach
1210 Hillsboro Mile
Hillsboro Beach, FL 33062

Waste Services of Florida, Inc.
3101 NW 16th Terrace
Pompano Beach, FL 33064

Travel Media Group
PO Box 3828
Norfolk, VA 23514-3828

Robert Taylor, Senior VP
CBRE Inc.
777 Brickell Ave, Suite 900
Miami, FL 33131

Lando Resorts
5405 Diplomat Circle #106
Orlando, FL 32810

AFS1 LLC
4818 Satsuma Ave
North Hollywood, CA 91601

Broward Co Board of Co
Commissioner
115 S Andrews Ave Room 119A
Fort Lauderdale, FL 33301

David Neblett
2550 S Bayshore Dr Ste 11
Miami, FL 33133

Franchise Tax Board
Attn Bankruptcy
PO Box 2952
Sacramento, CA 95812-2952

IRS
Ogden, UT 84201-0039

Mayo Group
517 N Foothill Rd
Beverly Hills, CA 90210

Securities Exchange Commission
5670 Wilshire Blvd 11th Fl
Los Angeles, CA 90036

Florida Power and Light
FPL General Mail Facility
Miami, FL 33188-0001

US Foods
PO Box 281838
Atlanta, GA 30384

Expedia, Inc. Headquarters
333 108th Ave NE
Bellevue, WA 98004

Agoda Company PTE Ltd
20 Cecil Street
Equity Plaza #14-01
Signapore 049705

Lexyl Travel Technologies LLC
777 S Flagler Dr. Ste 800
West Palm Beach, FL 33401

AMC Liquidators
3705 W Commercial Blvd
Fort Lauderdale, FL 33309

Broward County Code Enforcement
1 North University Dr Box 302
Plantation, FL 33324

~~Dry Masters Specialist LLC~~
~~2838 N State Rd 7~~
~~Hollywood, FL 33021~~

Hospitality Staffing Solutions
100 Glenridge Point Parkway Ste 400
Atlanta, GA 30342

Kaufman Rossin & Co
2699 S Bayshore Dr
Miami, FL 33133

Moffa Gainor & Sutton PA
100 SE Third Ave, Ste. 2202
Fort Lauderdale, FL 33394

Zevuloni & Associates
10130 NW 47th St
Sunrise, FL 33351

Amerigas
PO Box 22798
Fort Lauderdale, FL 33335-2798

All Stars Elevator
628 NW 132nd Ter.
Plantation, FL 33325-2184

Carl L. Kitchner
County Attorney for Broward County
115 S. Andrews Ave., Rm. 423
Fort Lauderdale, FL 33301

Hotels.com, LP
10440 North Central Expressway
Suite 400
Dallas, TX 75231

Travel Media Group
901 N Lake Destiny Dr
Suite 375
Maitland, FL 32751

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Travelscape, LLC dba Expedia Travel
10190 Covington Cross Dr
Las Vegas, NV 89144

VacationSpot S.L.
Ed Nortysur 13, 38003
Sta Cruz de Terierife
SPAIN

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012

Broward County Board of County
Commissioners
115 S. Andrews Ave Room #A-100
Fort Lauderdale, FL 33301

Broward County Records, Taxes &
Treasury
Attn: Bankruptcy Section
115 S. Andrews Ave Room #A-100
Ft Lauderdale, FL 33301

Roberto J. Kampfner, Esq.
White & Case LLP
633 W. Fifth St., Ste. 1900
Los Angeles, CA  90071-2007

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE